Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FORD, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATURAL HEALTH TRENDS CORP., CHRIS T. SHARNG, and TIMOTHY S. DAVIDSON,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Robert Ford ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Natural Health Trends Corp.

- 1 -
Class Action Complaint for Violation of the Federal Securities Laws

("Natural Health Trends" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or otherwise acquired the securities of Natural Health Trends from March 6, 2015 to January 12, 2016, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Natural Health Trends and certain of its officers and directors for violations of federal securities laws.

## **JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Defendants conduct business in this District, maintain their principal place of business in this District, and a significant portion of the Defendants' actions and the subsequent damages, took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

## **PARTIES**

6.     Plaintiff, as set forth in the attached Certification, acquired Natural Health Trends securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Natural Health Trends operates as an international direct-selling and e-commerce company. Natural Health Trends is a Delaware coporation headquartered in Rolling Hills Estates, California. Its common stock trades on the NASDAQ under the ticker symbol "NHTC."

8.     Defendant Chris T. Sharng ("Sharng") has served as the Company's President  throughout the Class Period.

9.     Defendant Timothy S. Davidson ("Davidson") has served as the Company's Chief Financial Officer ("CFO"), Senior Vice President and Corporate Secretary throughout the Class Period.

10.     The defendants referenced above in ¶¶ 8 – 9 are sometimes referred to herein as the "Individual Defendants."

11.     Defendant Natural Health Trends and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12.      Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)     approved or ratified these statements in violation of the federal securities laws.

13.     As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14.     Natural Health Trends  is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Natural Health Trends under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     The Company controls subsidiaries that sell personal care, wellness, and "quality of life" products under the "NHT Global" brand.

17.     The Company's wholly-owned subsidiaries have an active presence in: North America; Greater China (consisting of Hong Kong, Taiwan and China); South Korea; Japan; and Europe (consisting of Italy and Slovenia). The Company also

Class Action Complaint for Violation of the Federal Securities Laws

operates within certain Commonwealth of Independent States (Russia, Kazakhstan and Ukraine) through its engagement with a local service provider.

18.     The Company sells its products primarily through its network marketing operations, except for China where it sells directly to consumers through an e-commerce platform.

19.     The Company has not implemented a direct selling or multi-level marketing model in China. The Chinese government permits direct selling only by organizations that have a license that the Company does not have, and has also adopted anti-multilevel marketing legislation.

## **Materially False And Misleading Statements**

20.     On March 6, 2015, the Company filed an annual report on Form 10-K with the SEC for the year ended December 31, 2014 (the "2014 10-K"), which was signed by Defendants Sharng and Davidson. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Sharng and Davidson stating that the financial information contained in the 2014 10-K was accurate, all fraud was disclosed, and any material changes to the Company's internal control over financial reporting were disclosed.

21.     The 2014 10-K stated the following with regards to the Company's operations in China:

> We believe that the laws and regulations in China regarding direct selling and multi-level marketing are not specifically applicable to our Hong Kong-based e-commerce activity, and that *our Chinese entity is operating in compliance with applicable Chinese laws*.

> [Emphasis added].

Class Action Complaint for Violation of the Federal Securities Laws

22.     On May 4, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"), which was signed by Defendant Davidson. The Q1 2015 10-Q contained signed SOX certifications by Defendants Sharng and Davidson stating that the financial information contained in the Q1 2015 10-Q was accurate, all fraud was disclosed, and any material changes to the Company's internal control over financial reporting were disclosed.

23.     The Q1 2015 10-Q stated the following with regards to the Company's operations in China:

> China has been and continues to be our most important business development project. In June 2004, we obtained a general business license in China. Direct selling is prohibited in China without a direct selling license which we do not have. In December 2005, we submitted a preliminary application for a direct selling license. In June 2006, we submitted a revised application package in accordance with new requirements issued by the Chinese government. ***In June 2007, we launched a new e-commerce retail platform in China that does not require a direct selling license. We believe this model, which offers discounts based on volume purchases, will encourage repeat purchases of our products for personal consumption in the Chinese market. The platform is designed to be in compliance with our understanding of current laws and regulations in China.*** In November 2007, we filed a new, revised direct selling application incorporating a name change, our new e-commerce model and other developments. These direct selling applications were not approved or rejected by the pertinent authorities, but did not appear to materially progress. By 2009, the information contained in the most recent application was stale. The Company applied to temporarily withdraw the license application in February 2009 to furnish new information and intends to amend its application with the goal to re-apply in the next 12 months. We are unable to predict whether we will be successful in obtaining a direct selling license to operate in China, and if we are successful, when we will be permitted to enhance our e-commerce retail platform with direct selling operations.

Class Action Complaint for Violation of the Federal Securities Laws

1

2

[Emphasis added].

3

4

5

6

7

8

9

24.    On July 28, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"), which was signed by Defendant Davidson. The Q2 2015 10-Q contained signed SOX certifications by Defendants Sharng and Davidson stating that the financial information contained in the Q2 2015 10-Q was accurate, all fraud was disclosed, and any material changes to the Company's internal control over financial reporting were disclosed.

10

11

25.    The Q2 2015 10-Q stated the following with regards to the Company's operations in China:

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

China has been and continues to be our most important business development project. In June 2004, we obtained a general business license in China. Direct selling is prohibited in China without a direct selling license which we do not have. In December 2005, we submitted a preliminary application for a direct selling license. In June 2006, we submitted a revised application package in accordance with new requirements issued by the Chinese government. *In June 2007, we launched a new e-commerce retail platform in China that does not require a direct selling license. The platform is designed to be in compliance with our understanding of current laws and regulations in China.* In November 2007, we filed a new, revised direct selling application incorporating a name change, our new e-commerce model and other developments. These direct selling applications were not approved or rejected by the pertinent authorities, but did not appear to materially progress. By 2009, the information contained in the most recent application was stale. The Company applied to temporarily withdraw the license application in February 2009 to furnish new information and intends to amend its application with the goal to re-apply. We are unable to predict whether we will be successful in obtaining a direct selling license to operate in China, and if we are successful, when we will be permitted to enhance our e-commerce retail platform with direct selling operations.

28

Class Action Complaint for Violation of the Federal Securities Laws

[Emphasis added].

26.     On October 27, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2015 (the "Q3 2015 10-Q"), which was signed by Defendant Davidson. The Q3 2015 10-Q contained signed SOX certifications by Defendants Sharng and Davidson stating that the financial information contained in the Q3 2015 10-Q was accurate, all fraud was disclosed, and any material changes to the Company's internal control over financial reporting were disclosed.

27.     The 3Q 2015 10-Q stated the following with regards to the Company's operations in China:

> ***We believe that our China e-commerce retail platform operates in compliance with current laws and regulations in China.*** Further, after consulting with outside professionals, we also believe that our e-commerce direct selling model in Hong Kong does not violate any applicable laws in China, even though it is used for the internet purchase of our products by members in China. There can be no assurance, however, that the Chinese authorities will agree with our interpretations of existing laws and regulations or that China will not adopt new laws or regulations. Even if we are successful in obtaining a China direct selling license, our operations will remain subject to the uncertainties inherent in the complex regulatory environment in China.

[Emphasis added].

28.     The statements referenced in ¶¶ 20-27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to Natural Health Trends' business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to

Class Action Complaint for Violation of the Federal Securities Laws

disclose that: (1) the operations of Natural Health Trends' Chinese entity is not in compliance with applicable Chinese laws; and (2) as a result, Defendants' statements about Natural Health Trends' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

29.    On January 7, 2016, *Seeking Alpha* published a post indicating that a newspaper investigative report published in China revealed that the Company is being investigated by Chinese authorities.

30.    On this news, shares of Natural Health Trends fell $3.11 per share or over 10% from its previous closing price to close at $25.92 per share on January 7, 2016, damaging investors.

31.    On January 11, 2016, the Company issued a press release announcing fourth quarter 2015 estimated revenue in which Defendant Sharng stated, in part:

> On January 7, we became aware of an online posting alleging a government investigation of our business in China.  By January 11, our Chinese employees were in direct contact with the Beijing City's government officials. ***As of now, we are unaware of an investigation.*** We have initiated the process set forth in China's pertinent law to contact the website where the allegation was posted.  We will appropriately disclose any material, verified information.

[Emphasis added].

32.    On January 11, 2016, analyst firm GeoInvesting, LLC ("GeoInvesting") issued a report about the Company asserting, among other things, that: (1) according to a neighboring office employee, the Company's Beijing office was visited by uniformed authorities around Christmas, who seized property; (2) this visit by uniformed authorities corroborates the *Seeking Alpha* post that the Company is under investigation for running an illegal multi-level marketing business in China; (3) on

Class Action Complaint for Violation of the Federal Securities Laws

December 28, 2015, the Company posted a special notice on its official website warning its distributors to stop using its name; (4) on January 8, 2016, the Company announced the temporary suspension of its distributor website for maintenance; and (5) snapshots from the Company's Hong Kong website appear to confirm that the Company is operating an illegal multi-level marketing scheme in China.

33. On this news, shares of Natural Health Trends fell $2.65 per share or over 11% from its previous closing price to close at $20.70 per share on January 11, 2016, further damaging investors.

34. On January 12, 2016, GeoInvesting issued another report about the Company asserting, among other things, that news broke on several reputable Chinese media sites that morning, including *SINA Finance*, claiming the Company had been raided and is under investigation.

35. On this news, shares of Natural Health Trends fell $1.51 per share or over 7% from its previous closing price to close at $19.18 per share on January 12, 2016, further damaging investors.

36. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Natural Health Trends securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their

Class Action Complaint for Violation of the Federal Securities Laws

legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Natural Health Trends securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Natural Health Trends or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Natural Health Trends;

Class Action Complaint for Violation of the Federal Securities Laws

1   • whether the Individual Defendants caused Natural Health Trends to issue
2       false and misleading financial statements during the Class Period;
3   • whether Defendants acted knowingly or recklessly in issuing false and
4       misleading financial statements;
5   • whether the prices of Natural Health Trends securities during the Class
6       Period were artificially inflated because of the Defendants' conduct
7       complained of herein; and
8   • whether the members of the Class have sustained damages and, if so,
9       what is the proper measure of damages.

10      42.    A class action is superior to all other available methods for the fair and
11  efficient adjudication of this controversy since joinder of all members is
12  impracticable. Furthermore, as the damages suffered by individual Class members
13  may be relatively small, the expense and burden of individual litigation make it
14  impossible for members of the Class to individually redress the wrongs done to them.
15  There will be no difficulty in the management of this action as a class action.

16      43.    Plaintiff will rely, in part, upon the presumption of reliance established
17  by the fraud-on-the-market doctrine in that:

18  • Defendants made public misrepresentations or failed to disclose material
19      facts during the Class Period;
20  • the omissions and misrepresentations were material;
21  • Natural Health Trends securities are traded in an efficient market;
22  • the Company's shares were liquid and traded with moderate to heavy
23      volume during the Class Period;
24  • the Company traded on the NASDAQ and was covered by multiple
25      analysts;

26
27
28

- 12 -

Class Action Complaint for Violation of the Federal Securities Laws

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Natural Health Trends securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a

fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Natural Health Trends securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Natural Health Trends securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Natural Health Trends securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Natural Health Trends' disclosure controls and procedures.

50.     By virtue of their positions at Natural Health Trends, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although

Class Action Complaint for Violation of the Federal Securities Laws

1    such facts were readily available to Defendants. Said acts and omissions of

2    Defendants were committed willfully or with reckless disregard for the truth. In

3    addition, each defendant knew or recklessly disregarded that material facts were

4    being misrepresented or omitted as described above.

5        51.    Information showing that Defendants acted knowingly or with reckless

6    disregard for the truth is peculiarly within Defendants' knowledge and control. As the

7    senior managers and/or directors of Natural Health Trends, the Individual Defendants

8    had knowledge of the details of Natural Health Trends' internal affairs.

9        52.    The Individual Defendants are liable both directly and indirectly for the

10   wrongs complained of herein. Because of their positions of control and authority, the

11   Individual Defendants were able to and did, directly or indirectly, control the content

12   of the statements of Natural Health Trends. As officers and/or directors of a publicly-

13   held company, the Individual Defendants had a duty to disseminate timely, accurate,

14   and truthful information with respect to Natural Health Trends' businesses,

15   operations, future financial condition and future prospects. As a result of the

16   dissemination of the aforementioned false and misleading reports, releases and public

17   statements, the market price of Natural Health Trends securities was artificially

18   inflated throughout the Class Period. In ignorance of the adverse facts concerning

19   Natural Health Trends' business and financial condition which were concealed by

20   Defendants, Plaintiff and the other members of the Class purchased or otherwise

21   acquired Natural Health Trends securities at artificially inflated prices and relied

22   upon the price of the securities, the integrity of the market for the securities and/or

23   upon statements disseminated by Defendants, and were damaged thereby.

24       53.    During the Class Period, Natural Health Trends securities were traded on

25   an active and efficient market. Plaintiff and the other members of the Class, relying

26   on the materially false and misleading statements described herein, which the

27   Defendants made, issued or caused to be disseminated, or relying upon the integrity

28

Class Action Complaint for Violation of the Federal Securities Laws

of the market, purchased or otherwise acquired shares of Natural Health Trends securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Natural Health Trends securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Natural Health Trends securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

56.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    During the Class Period, the Individual Defendants participated in the operation and management of Natural Health Trends, and conducted and participated, directly and indirectly, in the conduct of Natural Health Trends's business affairs.

Because of their senior positions, they knew the adverse non-public information about Natural Health Trends' operations, current financial position and future business prospects.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Natural Health Trends' business practices, and to correct promptly any public statements issued by Natural Health Trends which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Natural Health Trends disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Natural Health Trends to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Natural Health Trends within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Natural Health Trends securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of Natural Health Trends. By reason of their senior management positions and/or being directors of Natural Health Trends, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Natural Health Trends to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Natural Health Trends and possessed the power to control the specific activities which

Class Action Complaint for Violation of the Federal Securities Laws

comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Natural Health Trends.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: January 12, 2016                    Respectfully submitted,

                                                            **THE ROSEN LAW FIRM, P.A.**

                                                            /s/ Laurence Rosen
                                                            Laurence M. Rosen, Esq. (SBN 219683)
                                                            355 S. Grand Avenue, Suite 2450
                                                            Los Angeles, CA 90071

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws