Paul R. Bessette (Bar No. 139675)
pbessette@kslaw.com
Michael J. Biles (Bar No. 186600)
mbiles@kslaw.com
**KING & SPALDING LLP**
633 West 5th Street, Suite 1700
Los Angeles, CA 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

James P. Sullivan (*pro hac vice*)
jsullivan@kslaw.com
Tyler W. Highful (*pro hac vice*)
thighful@kslaw.com
S. Saliya Subasinghe (*pro hac vice*)
ssubasinghe@kslaw.com
**KING & SPALDING LLP**
401 Congress Avenue, Suite 3200
Austin, TX 78701
Tel:  (512) 457-2000
Fax: (512) 457-2100

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FORD, Individually and on Behalf of All Others Similarly Situated, Plaintiff, <br><br> v. <br><br> NATURAL HEALTH TRENDS CORP., CHRIS T. SHARNG, TIMOTHY S. DAVIDSON, and GEORGE K. BROADY, Defendants. | Case No.:  2:16-cv-00255-TJH-AFM <br><br> **DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S MOTION TO STRIKE AND OBJECTION TO DEFENDANTS REQUEST FOR JUDICIAL NOTICE** <br><br> Date: September 12, 2016 <br> Time: UNDER SUBMISSION <br> Courtroom: 17 <br><br> Honorable Terry J. Hatter, Jr. <br> Complaint Filed: January 12, 2016 <br> Trial Date: None Set |

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE

## PROCEDURAL BACKGROUND

On June 15, 2016, Defendants filed a Motion to Dismiss Plaintiffs' consolidated complaint ("Motion to Dismiss" or "MTD") (Dkt. No. 47), a Declaration in support of their motion to dismiss ("Bessette Declaration") (Dkt. No. 48), and a Request for Judicial Notice in support of their Motion to Dismiss ("Request for Judicial Notice") (Dkt. No. 49).   Defendants asked the Court to take judicial notice of fifteen documents, marked Exhibit 1 through Exhibit 15, attached to the Declaration.  *See* Request for Judicial Notice at 1–2.

On August 1, 2016 Plaintiffs filed a Motion to Strike and Objection to Defendants' request for judicial notice ("Motion to Strike") (Dkt. No. 53).  Plaintiffs contend that the Court should not take judicial notice of Exhibits 5, 6, 7, 8, 11, 12, 14, and 15 attached to the Declaration.  *See* Mot. to Strike at 4.  However, Plaintiffs do not object to the Court taking judicial notice of Exhibits 1, 2, 3, 4, 9, 10, and 13 attached to the Declaration.  *Id.* at 1.

## ARGUMENT

To the extent that Plaintiffs rely on the Federal Rules of Civil Procedure as authority for striking portions of Defendants' Motion to Dismiss (Mot. to Strike at 5–6), "Rule 12(f) cannot serve as the procedural vehicle for striking language contained in motion papers."  *Parker v. CMRE Fin. Svcs., Inc.*, No. 07cv1302 JM(AJB), 2007 WL 3276322, at *4 (S.D. Cal. Nov. 5, 2007) (citing *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885–86 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike")).  Federal Rule of Civil Procedure 12(f) provides for motions to strike pleadings, and in turn Federal Rule of Civil Procedure 7 does not include motions to dismiss in the definition of a pleading.  *See Kraft v. Old Castle Precast Inc.*, Case No. LA CV 15-00701-VBF, 2015 WL 11216774, at *2 (C.D. Cal. Aug. 3, 2015).  Because Plaintiffs fail to identify any other authority that permits striking Defendants' Motion to Dismiss, the Court should deny Plaintiffs' Motion to

Strike.  *See Renard v. San Diego Unified Port District*, 2007 WL 2262853, *1–2 (S.D. Cal. Aug. 6, 2007) (After denying as improper the plaintiff's motion to strike parts of the defendants' motion to dismiss, the court stated, "much of plaintiff's motion attacks the sufficiency of Defendants' arguments raised in their motion to dismiss. The Court notes that Plaintiff may raise any perceived deficiencies in Defendants' motion in his opposition to the motion to dismiss.").

To the extent Plaintiffs oppose Defendants' Request for Judicial Notice, the Court should take judicial notice of Exhibits 1, 2, 3, 4, 9, 10, and 13 attached to the Declaration because Plaintiffs do not object to the Court taking judicial notice of these seven exhibits.  *See* Mot. to Strike at 1.  The Court should also take judicial notice of Exhibits 5, 6, 7, 8, 11, 12, 14, and 15 attached to the Declaration for the reasons stated below.

## I. The Court should take judicial notice of the undisputed fact that the 21st Century Business Herald was shut down by Chinese authorities and that some of its executives were convicted of fraud

In their Class Action Complaint ("Complaint"), Plaintiffs reference three Chinese news articles purportedly published by an entity named "21st Century Business Herald" on January 11, 2016, January 12, 2016, and February 2–3, 2016.  *See* Compl., Dkt. No. 32, ¶¶ 111, 112, 113, 150, 157, 158.  For example, Plaintiffs allege that "on January 11, 2016, the 21st Century Business Herald, a leading Chinese paper, announced that in response to whistleblower complaints, Chinese authorities had begun an investigation of NHT."  Compl. ¶ 150. Plaintiffs, however, did not attach copies of these articles to their Complaint and Defendants were unable to find copies of these articles purportedly published by the 21st Century Business Herald. Defendants were also unable to find copies of these purported articles anywhere else on the internet.  The Court is entitled to review documents incorporated by reference into Plaintiffs' Complaint.

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE

Curiously, Plaintiffs do not attach copies of the three articles (purportedly published by the 21st Century Business Herald) to their Complaint. One can only speculate—is it because the articles do not exist? After all, a highly reputed newspaper, The Wall Street Journal (Bessette Decl., Ex. 6), reported that Chinese authorities "ordered the popular website of the 21st Century Business to cease operations Thursday [April 30, 2015] … By 5 p.m., the site had already been taken down with viewers directed to a network error page."[1] Plaintiffs do not question the authenticity of the Wall Street Journal article, nor do they challenge the accuracy of the facts contained therein. Plaintiffs argue only that "the contents of the 'screen shots' do not prove or disprove that the market was aware of any particular fact at a given point in time, which would be the only arguable basis for allowing their consideration at this stage of the proceedings." Motion to Strike at 5. That is true. The screenshot (Bessette Decl., Ex. 7) does not prove or disprove that the articles were published by the 21st Century Business Herald on January 11 and 12, 2016, and February 2–3, 2016, almost eight months after it was shut down by Chinese authorities. (Bessette Decl., Ex. 6.) But it does raise serious doubts as to the plausibility of Plaintiffs' claims—*i.e.*, that these three articles were actually published at all and that the market was aware of these articles on the dates that they were allegedly published. These doubts are only compounded by the reports by highly-reputed news sources, which are not challenged as false by Plaintiffs—Reuters (Bessette Decl., Ex. 5), The Wall Street Journal (Bessette Decl., Ex. 6), and The New York Times. (Bessette Decl., Ex. 8). *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").[2]

---

[1] Exhibit 7 merely shows the error message Defendants received when they attempted to access the 21st Century Business Herald's website (www.21cbh.com).

[2] As Plaintiffs correctly point out (Mot. to Strike at 2), Defendants made a typographic error in its Request for Judicial Notice by stating that Exhibits 5, 6, 8, 11, and 12 were

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE

Moreover, Plaintiffs allege that the articles purportedly published by the 21st Century Business Herald were corrective disclosures.  For example, Plaintiffs allege that "an article appearing overnight between February 2 and February 3, 2016, the 21st Century Business Herald published an article which revealed that NHT's claims in its January 13, 2016 press release were false."  *See* Compl. ¶ 157.  The market, however, was also aware that the 21st Century Business Herald was in the extortion business:

- "In the alleged extortion scheme, the website [21st Century Business Herald] would publish negative reports about the companies. The companies would sign advertising contracts with the website, which would in turn delete the reports." (Bessette Decl., Ex. 6, Te-Ping Chen, *China Closes 21st Century Business Herald's Website*, WALL STREET JOURNAL, (Apr. 30, 2015 9:57 AM));

- "A court in Shanghai sentenced a prominent former news executive on Thursday to four years in prison for extortion, Chinese state news media reported. The court found that Shen Hao, the former chairman of 21st Century Media, had demanded advertising purchases from businesses in exchange for positive news articles, or for covering up damaging reports, according to Xinhua, the state run news agency. He was also convicted of embezzlement" (Bessette Decl., Ex. 8, Austin Ramzy, *Ex-News Executive in China Gets 4-Year Sentence for Extortion*, NEW YORK TIMES, (Dec. 24, 2015)).

When evaluating the plausibility of Plaintiffs' allegations based on articles purportedly publish by the 21st Century Business Herald, the Court should look at the total mix of information that was publicly available to a reasonable investor at the time.  *See In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 864 (N.D. Cal. 2004) (The Court "may take judicial notice of information that was publicly available to

---

referenced in the Complaint (Request for Judicial Notice at 4).  The sentence should have read: "In the CAC, Plaintiffs reference (1) the blog posts (*i.e.*, the so-called 'Analysts' reports') attached as Exhibits 9 and 10 to the Bessette Declaration; …." *Id.* Defendants apologize for any confusion.

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE

reasonable investors at the time the defendant made the allegedly false statements.");
*see also* Bessette Decl., Ex. 5, 6, 8.

The Court should use its judicial experience and common sense in evaluating the plausibility of Plaintiffs' claims regarding the articles purportedly published in the 21st Century Business Herald.  The Court does not have to accept Defendants' contention that the 21st Century Business Herald's website has been shut down.  The Court can attempt to access the 21st Century Business Herald's website and see the error message for itself.  Or, the Court, drawing on its inherent powers, can even order Plaintiffs to produce copies of the three articles that Plaintiffs allege were published by the 21st Century Business Herald.  *See* Compl. ¶¶ 111, 112, 113, 150, 157, 158. Because Plaintiffs must have reviewed these alleged articles prior to drafting their Complaint, such an order would not impose an undue burden.

## II.   The Court should take judicial notice of the article entitled "High degree of Autonomy—The Demarcation Issues Between the Central Authorities and the HKSAR," published in the Basic Law Bulletin

This article (Exhibit 15) is based on a paper presented by the Solicitor General of Hong Kong in a comparative constitutional law conference held in April 2000, which was jointly organized by the Hong Kong Department of Justice and University of Hong Kong's Faculty of Law, and is available on the website of the Hong Kong Department of Justice (http://www.doj.gov.hk/eng/public/basiclaw/basic2-3.pdf).

Plaintiffs argue that the Court should not judicially notice this "article opining as to the relationship between Honk Kong and China (Exhibit 15)" because it is "used for the truth of the matter asserted therein …to show the relationship between Hong Kong and China."  *See* Mot. to Strike at 4.  Although the Court must accept Plaintiffs' well-pleaded factual allegations as true on a motion to dismiss, the Court should not accept Plaintiff's conclusory allegations regarding the *legal relationship* between Hong Kong and China—and the extra-territorial application of Chinese law in Hong Kong.

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE

This is an issue of law—not fact.  The Court should take judicial notice of the laws of Hong Kong and China, and their extra-territorial application.  *See* MTD at 7 (citing *Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004); *Quinn v. Robinson*, 783 F.2d 776, 813 (9th Cir. 1986)).  Defendants believe that the Hong Kong Solicitor General's opinion is a good starting point to understanding Hong Kong's legal system and the extra-territorial application of Chinese law in the Hong Kong Special Administrative region.  *See* Bessette Decl., Ex. 15.  But the Court is not bound to stop there; it can take judicial notice of other sources of Hong Kong and Chinese law.

### III.  The Court should not convert Defendants Motion to Dismiss into a motion for summary judgment

Because Defendants wish to stand on their Motion to Dismiss, and do not want their Motion to Dismiss converted to a motion for summary judgment, they respectfully request that the Court ignore any exhibits that it deems objectionable.

### IV.  Conclusion

The Court should deny Plaintiffs' Motion to Strike because (1) Federal Rule of Civil Procedure 12(f) cannot be used for striking language contained in a motion to dismiss, *Kraft*, 2015 WL 11216774, at *2, and (2) Plaintiffs do not identify any other authority that permits striking language contained in a motion to dismiss.  Defendants also respectfully request that the Court take judicial notice of the exhibits attached to the Bessette Declaration in support of their motion to dismiss.

Dated: August 22, 2016          KING & SPALDING LLP


                                /s/  Paul R. Bessette
                                Paul R. Bessette
                                Michael J. Biles
                                James P. Sullivan
                                Tyler W. Highful
                                S. Saliya Subasinghe

                                *Counsel for Defendants*


## CERTIFICATE OF CONFERENCE

The undersigned counsel for Defendants hereby certifies that he conferred with Mr. Adam Apton of Levi & Korsinsky LLP and Jonathan Horne of The Rosen Law Firm, PA, co-lead counsel for Lead Plaintiffs, on August 8, 2016.  Mr. Apton agreed to extend Defendants' deadline to respond to Lead Plaintiffs' Motion to Strike and Objection to Defendants' Request for Judicial Notice (Dkt. No. 53) from August 15, 2016 to August 22, 2016.

                                /s/ Tyler Highful
                                Tyler Highful
                                *Counsel for Defendants*


## CERTIFICATE OF SERVICE

The undersigned counsel for Defendants hereby certifies that a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on August 22, 2016.

                                /s/ Paul R. Bessette
                                Paul R. Bessette
                                *Counsel for Defendants*

DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION TO STRIKE