**LEVI & KORSINSKY LLP**
Adam C. McCall (SBN: 302130)
Email: amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles CA 90071
Tel: (213) 985-7290
Fax: (202) 333-2121

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT FORD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>NATURAL HEALTH TRENDS CORP., CHRIS T. SHARNG, and TIMOTHY S. DAVIDSON,<br><br>Defendants. | Case No. 2:16-cv-00255-TJH-AFM<br><br>**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION OF LEAD PLAINTIFF FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:    October 30, 2017**<br>**Time:    UNDER SUBMISSION**<br>**Room:   Courtroom 9B**<br>**Judge:   Hon. Terry J. Hatter, Jr.** |

## **NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION**

PLEASE TAKE NOTICE that Lead Plaintiffs Wang Juan and Manh Dao and Named Plaintiffs Abolghassem Tehrani and Tony A Tran (collectively, "Plaintiffs") (on behalf of themselves and all Settlement Class Members), by and through counsel of record in the Litigation, hereby move this Court pursuant to Federal Rule of Civil Procedure 23(e) for an order: (1) granting preliminary approval of the Stipulation of Settlement ("Stipulation"); (2) granting preliminary certification of a settlement class; and (3) directing dissemination of notice to the Settlement Class.  The Motion is set for hearing on October 30, 2017, under submission, before the Honorable Terry J. Hatter, Jr., United States District Court, Central District of California, 350 W. 1st Street, Courtroom #9B, 9th Floor, Los Angeles, California 90012.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation and the exhibits filed therewith; all other pleadings and papers filed in this action; and such other matters as may be presented to the Court before or at the time of the hearing. In accordance with Local Rule 703, Defendants have reviewed this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not oppose this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS .. 2

    A.   Plaintiffs' Claims and Allegations .................................................... 2

    B.   Procedural History and Co-Lead Counsel's Investigation ............. 3

    C.   Settlement Negotiations ................................................................... 5

III.  THE PROPOSED TERMS OF SETTLEMENT ........................................ 6

    A.   Settlement Class Definition ............................................................. 6

    B.   Monetary Consideration and Plan of Allocation ........................... 6

    C.   Release Provisions .......................................................................... 7

    D.   Attorneys' Fees and Reimbursement of Expenses .......................... 8

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE ........................................................................................ 9

    A.   The Settlement Approval Process ................................................... 9

    B.   The Proposed Settlement Meets the Requirements for Preliminary Approval ...................................................................................... 10

        1.   Amount Offered in Settlement ...............................................11

        2.   The Extent of Discovery Completed and the Stage of the Proceedings ...........................................................................11

        3.   The Proposed Settlement Resulted from Arm's Length Negotiations and Did Not Involve Any Collusion .................12

V.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE ................................................................................... 13

    A.   The Settlement Class Members Are So Numerous that Joinder Is Impracticable ................................................................................ 13

    B.   Common Questions of Law or Fact Exist ..................................... 14

    C.   Plaintiffs' Claims Are Typical of Those of the Settlement Class . 15

    D.   Plaintiffs are Adequate Representatives of the Settlement Class .. 15

    E.   The Requirements Of Rule 23(b)(3) Are Also Satisfied ............... 16

        1.   Common Legal and Factual Questions Predominate .............16

iii

2. A Class Action Is the Superior Means To Adjudicate Lead Plaintiffs' and Settlement Class Members' Claims ...............17

VI. THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE ........................17

VII. PROPOSED SCHEDULE ........................................................ 19

VIII. CONCLUSION ...................................................................... 20

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:16-cv-00255-TJH-AFM

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3

Cases

4

*Alberto v. GMRI*,

5

No. Civ. 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12,

6

2008) ..........................................................................................................10

7

*Amchem Prods., Inc. v. Windsor*,

8

521 U.S. 591 (1997)............................................................................13, 14

9

*Bellows v. NCO Financial Sys., Inc.*,

10

No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)

11

..........................................................................................................................10

12

*Browning v. Yahoo! Inc.*,

13

No., C04-01463 HRL, 2006 WL 3826714 (N. D. Cal. Dec. 27, 2006) ........8

14

*General Telephone Co. of Southwest v. Falcon*,

15

457 U.S. 147 (1982)...........................................................................................13

16

*Hanlon v. Chrysler Corp.*,

17

150 F.3d 1011 (9th Cir. 1998) ..........................................................passim

18

*In re Applied Micro Circuits Corp. Sec. Litig.*,

19

No. 01-cv-0649 (KAJB), 2003 WL 25419526 (S.D. Cal. July 15, 2003)...11

20

*In re Cement and Concrete Antitrust Litig.*,

21

817 F.2d 1435 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989)

22

..........................................................................................................................15

23

*In re Equity Funding Corp. of Am Sec. Litig.*,

24

603 F.2d 1353 (9th Cir. 1979) ....................................................................15

25

*In re Heritage Bond Litig.*,

26

No. MDL 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004)12

27

*In re Omnivision Tech., Inc.*,

28

iv

559 F. Supp.2d 1036 (N.D. Cal. 2008) ...................................................7, 8

*Linney v. Cellular Alaska P'ship,*

    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..............8


*Officers for Justice v. Civil Serv. Comm'n,*

    688 F.2d 615 (9th Cir. 1982) .......................................................8

*Rodriguez v. Carlson,*

    166 F.R.D. 465 (E.D. Wash. 1996) ...........................................12

*Schaefer v. Overland Express Family of Funds,*

    169 F.R.D. 124 (S.D. Cal. 1996) ...............................................12

*Staton v. Boeing Co.,*

    327 F.3d 938 (9th Cir. 2003) .......................................................7

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) .......................................................15


Other Authorities

*Manual for Complex Litigation*, Third, §23.14 (West ed. 1995) ......................15


Rules

Fed. R. Civ. P. 23............................................................................11, 14

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:16-cv-00255-TJH-AFM

# I.     **INTRODUCTION**

Plaintiffs, on behalf of themselves and all Settlement Class Members, respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this action embodied in the Stipulation.[1] The proposed Settlement was reached after the parties engaged in arm's length settlement negotiations.  Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement which consists of $1,750,000 in cash.  If approved, it will fully resolve this action filed in January 2016 on behalf of a class of people who purchased or otherwise acquired securities of Natural Health Trends Corp. ("NHTC" or the "Company") during the period between March 6, 2015 and March 15, 2016, inclusive ("Settlement Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable and adequate so that notice of the proposed Settlement can be given to the Settlement Class Members and a hearing can be scheduled to consider final settlement approval.  The Settlement clearly meets these criteria.  As discussed below, while Lead Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability and damages, and therefore the $1,750,000 cash fund that will be created under the Stipulation represents a beneficial resolution of the Litigation and the Settlement is in the best interests of the Settlement Class.

Because all requirements for settlement approval are met, the Court should certify the Settlement Class for settlement purposes only.  Also, because

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

the Plan of Allocation is fair, reasonable and adequate, it should be preliminarily approved.   Finally, the Court should schedule a Final Approval Hearing to determine whether the proposed Settlement, the Plan of Allocation, and Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable and adequate.

## II.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.   Plaintiffs' Claims and Allegations

Plaintiffs brought this action on behalf of all persons who purchased or otherwise acquired NHTC securities between March 6, 2015 and March 15, 2016, inclusive (the "Settlement Class Period").   Plaintiffs' Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 32) (the "Consolidated Complaint") alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act of 1934.   Plaintiffs contend that these Defendants made statements during the Class Period which falsely assured investors that NHTC was in compliance with Chinese laws governing multilevel marketing, and was not engaged in multilevel marketing in China, and thus concealed the substantial risk that NHTC could face severe legal and regulatory penalties in China, including that NHTC's China operations representing more than 90% of its global revenue could be shut down and that NHTC could face substantial monetary penalties.

The Consolidated Complaint alleges that, when these risks became public, NHTC's share price fell and shareholders were damaged.   Plaintiffs allege that three disclosure events, in particular, resulted in direct losses to investors.   The first disclosure occurred on December 28, 2015, when the Company disclosed that there had been some member rule violations in the market.   In reaction to this news, shares of NHTC dropped approximately $6.04 per share or 13.1%.

Then, on January 11, 2016, the 21st Century Business Herald announced in an online article that, in response to whistleblower complaints, Chinese authorities had begun an investigation of NHTC.  NHTC's stock price fell $2.65 per share, or 11.3%, on January 11, 2016.  Finally, on March 15, 2016, during trading hours, GeoInvesting reported on its website that NHTC's Beijing office had been shut down since March 11, 2016, purportedly for renovations. The GeoInvesting report charged that, in truth, NHTC's Beijing office had been shut down as a result of an investigation by China's State Administration for Industry and Commerce.   NHTC's stock price fell $2.63 or 8.4%.   While the Consolidated Complaint alleged several additional declines in the price of NHTC's stock, the disclosure events listed above resulted in direct losses to investors and, in Lead Plaintiffs' opinion, caused recoverable losses.

Defendants have denied and continue to deny all of Plaintiffs' claims and contentions in this Litigation, deny that they engaged in any wrongdoing or made any false or misleading statements or omissions, and deny that Plaintiffs or any Settlement Class Members were harmed as a result of any alleged conduct, acts, statements or omissions by Defendants.

## B.    Procedural History and Co-Lead Counsel's Investigation

On January 12, 2016, a putative class action complaint styled *Ford v. Natural Health Trends Corp. et. al.*, was filed against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

On January 14, 2016, a second putative class action complaint styled *Li v. Natural Health Trends Corp. et. al.*, was filed against Defendants alleging violations of Sections 10(b) and 20(a) of the Exchange Act.

On March 29, 2016, the Court consolidated the two actions, appointed Wang Juan and Manh Dao as co-lead plaintiffs, and approved the selection of

3

Levi & Korsinsky, LLP and The Rosen Law Firm, P.A. as co-lead counsel for the putative class.  (ECF No. 27.)

Prior to filing the Consolidated Complaint, Co-Lead Counsel conducted an extensive investigation and analysis of the factual and legal issues involved in this Litigation, which included: (a) review and analysis of relevant filings made by NHTC with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; (d) the interview of 11 former employees of NHTC and "members" of the Company; (e) review and analysis of English and Chinese-language information readily obtainable on the Internet; and (f) discussions with analysts who had issued reports about NHTC.

Lead Plaintiffs and Plaintiffs Abolghassem Tehrani and Tony A. Tran then filed the Consolidated Complaint on April 29, 2016.

On June 15, 2016, Defendants filed a Motion to Dismiss, which Plaintiffs opposed.  On December 5, 2016, the Court denied Defendants' Motion to Dismiss.  (ECF No. 66.)

Following the denial of Defendants' Motion to Dismiss, counsel for the Parties held a discovery conference on January 5, 2017.  At or around this time, Defendants requested an extension of their deadline to answer the Consolidated Complaint, and the Parties so stipulated.  On February 3, 2017, the Court entered an order instructing Defendants to answer the Consolidated Complaint on or before February 17, 2017 and instructing the Parties to exchange initial disclosures pursuant to Rule 26(a)(1) on or before February 24, 2107.  (ECF No. 78.)

In accordance with the Court's Order, on February 17, 2017, Defendants filed and served their Answer to the Consolidated Complaint (ECF No. 79),

denying the material allegations in the Consolidated Complaint and asserting a number of affirmative defenses.

The Parties exchanged initial disclosures on February 24, 2017, and thereafter engaged in document discovery, exchanging demands and responses to requests for production and interrogatories.

### C.    <u>Settlement Negotiations</u>

On or around June 22, 2017, in advance of Plaintiffs' deadline for filing a motion for class certification, the Parties began negotiating a potential resolution of the case.  As these negotiations were promising, the Parties jointly submitted a stipulation on June 29, 2017, seeking to extend various case management deadlines pending settlement discussions.  On July 10, 2017, the Court granted the Parties' stipulation, and stayed the Litigation for thirty days.  (ECF No. 87.)

The Parties continued settlement discussions.  On or around July 18, 2017, the Parties agreed upon a settlement in principle.  Thereafter, they promptly notified the Court of their tentative agreement and requested the Court to stay all pending deadlines to allow them time to negotiate and submit a written settlement agreement and motion for preliminary approval of a class action settlement.  On July 25, 2017, the Court granted the request and stayed all deadlines for a period of sixty days.  (ECF No. 89.)

After reaching an agreement in principle regarding the relief to the Settlement Class, the parties began preparing the settlement documents, including the Stipulation, the class notice, the summary notice, the Proof of Claim and Release form, and the proposed orders granting preliminary and final approval and entering final judgment.  Over the next several weeks, the parties exchanged drafts of the settlement documents.  The parties finalized and executed the Stipulation on October 2, 2017.

### III.  **THE PROPOSED TERMS OF SETTLEMENT**

#### A.  **Settlement Class Definition**

The Settlement Class includes all persons and entities who purchased or otherwise acquired NHTC securities during the period between March 6, 2015 and March 15, 2016, inclusive.[2]

#### B.  **Monetary Consideration and Plan of Allocation**

Under the terms of the proposed Settlement, the parties have agreed that NHTC or its insurers will make a cash payment of one million seven-hundred fifty thousand dollars ($1,750,000) on behalf of all Defendants, as set forth in greater detail in ¶¶ 2.1–2.10 of the Stipulation.  The $1.75 million in cash will be deposited into the Settlement Fund (as defined in ¶ 1.35 of the Stipulation) no later than twenty-one (21) days after both of the following have taken place: (a) the Court has entered the Preliminary Approval Order granting preliminary approval of the Settlement; and (b) NHTC's counsel have received from Co-Lead Counsel a Form W-9 providing the tax identification number for the escrow account.  (*See* Stipulation ¶ 2.1.)  Any interest earned will be for the benefit of the Settlement Class.  (*Id.* ¶ 1.35.)

Co-Lead Counsel have considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation.  Co-Lead Counsel did

---

[2] Excluded from the Settlement Class are Defendants; members of the Defendants' immediate families; officers, directors, and subsidiaries of NHTC; any firm, entity, or corporation wholly owned by any Defendant and/or any member(s) of a Defendant's immediate family; any trust of which a Defendant is the settlor or which is for his benefit and/or that of any member of his immediate family; and the legal representatives, heirs, or successors-in-interest of NHTC and the Individual Defendants.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions provided in the Notice.

not favor or consider the particular trading history of Plaintiffs or of any other individual Settlement Class Members in crafting this plan.

A copy of the Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action, pages 4 to 6, at Exhibit A-1 to the Stipulation. *See* Stipulation, Ex. A-1 at 4–6.

### C.    <u>Release Provisions</u>

Upon the Effective Date, as defined in ¶ 1.8 of the Stipulation, Plaintiffs and all other Settlement Class Members, each of their respective Related Persons, and all other Persons who have or claim the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Settlement Class Member any of the Released Claims (or to obtain the proceeds of any recovery therefrom) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed all Released Claims (including Unknown Claims) against the Released Persons, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release form, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement.  (Stipulation ¶ 6.2.)

Released Claims shall mean any and all claims (including Unknown Claims as defined in ¶ 1.42 hereof), duties, debts, demands, rights, disputes, suits, matters, damages, losses, obligations, proceedings, issues, judgments, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary or otherwise; restitution; rescission; interest; attorneys' fees; expert or consulting fees; and any other costs, expenses, charges,  or  liability  whatsoever),  whether  based  on  federal,  state,  local,

statutory, common, administrative, or foreign law or any other law, rule or regulation, or at equity, whether known or unknown, discoverable or undiscoverable, concealed or hidden, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, choate or inchoate, accrued or unaccrued, matured or unmatured, at law or in equity, whether class, derivative, or individual in nature, which now exist or heretofore have existed or have been or could have been asserted in any forum, whether foreign or domestic, by Plaintiffs or any Settlement Class Member, or any Person claiming through or on behalf of any of them, against any of the Released Persons based upon, arising out of, or relating in any way to the claims, allegations, acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations or omissions that are, were, or could have been alleged in the Litigation.   Expressly excluded from Released Claims are: (i) the matters set forth in ¶ 6.5 of this Stipulation; and (ii) the shareholder derivative claims asserted in *Zhou v. Sharng et al.* and *Kleinfeldt v. Sharng et al.*, pending in the Superior Court of the State of California, County of Los Angeles, and the United States District Court for the Central District of California, respectively.   (*Id.* ¶ 1.29.)

### D. <u>Attorneys' Fees and Reimbursement of Expenses</u>

Co-Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed twenty-five percent (25%) of the total Settlement Fund (or approximately $437,500).   (*Id.* ¶ 8.1.)   Co-Lead Counsel will also apply to the Court for a reimbursement of its reasonable expenses incurred through the Litigation.   (*Id.*)

## IV. <u>PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE</u>

### A. <u>The Settlement Approval Process</u>

Rule 23(e) requires that before a class action is dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the Court and judicial approval must be obtained. To that end, the Court must find that the proposed settlement is "fundamentally fair, adequate, and reasonable. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citations omitted)). A settlement agreement is presumptively fair if it "was reached in arm's length negotiations, after relevant discovery had taken place." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

Moreover, the Ninth Circuit has a policy favoring settlement, "particularly in class action suits." *Omnivision*, 559 F. Supp. 2d at 1041; *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."). The Court's inquiry into the settlement agreement is ultimately limited to the extent necessary to make a judgment that the agreement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Omnivision*, 559 F. Supp. 2d at 1041 (internal citations omitted). Thus, the court "need not reach the merits of the case or form conclusions about the underlying questions of law or fact" in determining the fairness, reasonableness and adequacy of a settlement agreement. *Id.*

## B. The Proposed Settlement Meets the Requirements for Preliminary Approval

At the preliminary approval stage, the Court must conduct a "prima facie review of the relief and notice" provided by the settlement agreement before the Court orders notice to be sent. *Browing v. Yahoo! Inc.*, No., C04-01463 HRL, 2006 WL 3826714, at *7 (N.D. Cal. Dec. 27, 2006). The court must find the release to be "fair and reasonable" and the notice to be "adequate." *Id.* at *7-8. Ultimately, in making a final determination of whether the proposed Settlement is fair, adequate, and reasonable, the Court will balance some or all of the following factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Consideration of these factors shows that the proposed Settlement now before the Court falls squarely within the range of reasonableness warranting notice of the proposed Settlement to the Settlement Class Members and scheduling a Final Approval Hearing.

Plaintiffs believe that the case has merit and that they have evidence to establish Defendants' liability. Nevertheless, Plaintiffs recognize that, were they to continue prosecution of this Action, they would face substantial risks. For their part, Defendants have denied the material allegations of the Consolidated Complaint, denied that the allegations in the Consolidated Complaint state a cognizable claim, and denied that NHTC shareholders have sustained any damages as a result of any alleged misconduct by Defendants.

In view of these factors, without a settlement, Plaintiffs and the Settlement Class Members face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement.   In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time.

### 1.   Amount Offered in Settlement

As discussed above, a Settlement Fund of $1,750,000 in cash will be created under the terms of the proposed Settlement.  Given the issues Plaintiffs face regarding establishing liability, loss causation, class certification, and damages, there is a substantial risk that nothing would be recovered if this case were to proceed to trial.  Thus, the $1,750,000 in cash is reasonable under the circumstances.

### 2.   The Extent of Discovery Completed and the Stage of the Proceedings

The parties reached the proposed Settlement after substantial discussions and an arms-length negotiation discussing the merits of the case.  Although Plaintiffs believed their claims had merit, Plaintiffs still had many obstacles to overcome to achieve a successful outcome.   Co-Lead Counsel conducted a thorough investigation into the claims, including the interview of 11 former employees of NHTC and "members" of the Company, a review of Defendants' public documents, conference calls and announcements, SEC filings, wire and press releases published by and regarding NHTC, analysts' reports and advisories about NHTC and information readily obtainable on the Internet. Thus, Lead Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct on Settlement Class Members and the alleged

1  damages, and were able to act intelligently in negotiating the proposed

2  Settlement.

### 3. The Proposed Settlement Resulted from Arm's Length Negotiations and Did Not Involve Any Collusion

The Settlement is the result of informed, arm's length and hard-fought negotiations between Co-Lead Counsel and Defendants' counsel. There can be no claim of collusion here.

Moreover, counsel for each party is experienced and thoroughly familiar with the factual and legal issues. Courts recognize that the opinion of experienced and informed counsel supporting a settlement is entitled to considerable weight. *See Bellows v. NCO Financial Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (finding that "it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight"); *see also Alberto v. GMRI*, No. Civ. 07-1895 WBS DAD, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008) (stating that "when approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits").

For the reasons summarized above, Co-Lead Counsel believe, based on their experience, knowledge of the strengths and weaknesses of the case, and all other factors considered in evaluating proposed class action settlements, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of all Settlement Class Members.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Plaintiffs seek and Defendants agree to the certification of a Settlement Class defined as all persons and entities who purchased or otherwise acquired NHTC securities on the public United States market between March 6, 2015 and March 15, 2016, inclusive.  Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.  *See Hanlon,* 150 F.3d at 1019.

As discussed below, certification of a settlement class is appropriate here.

### A.   The Settlement Class Members Are So Numerous that Joinder Is Impracticable

While the precise number of the Settlement Class Members is unknown, the number certainly exceeds any number considered practical for joinder.  As of the filing of the Consolidated Complaint, the Company had over 11.5 million shares of common stock outstanding.  Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts.  *See In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-cv-0649 (KAJB), 2003 WL 25419526, at *8 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued millions of shares and the class is presumed to have thousands of members).  From this information, one may conclude that there are likely thousands of members in the Settlement Class.  The threshold for a presumption of impracticability is thus easily met.  *See Hanlon*, 150 F.3d at 1019.

### B.    <u>Common Questions of Law or Fact Exist</u>

In order to maintain a class action, there must be "questions of law *or* fact common to the class . . . ."   Fed. R. Civ. P. 23(a)(2) (emphasis added). Construed liberally like the other Rule 23 requirements, commonality does not "require all questions of law and fact to be common."  *In re Heritage Bond Litig.*, No. MDL 02-ML-1475 DT, 2004 WL 1638201, at \*14 (C.D. Cal. July 12, 2004) (finding that "it is not necessary that every issue of law or fact be identical"); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

This case presents numerous common questions of both law *and* fact. Here, questions of law and fact common to all Settlement Class Members include:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged in the Consolidated Complaint;

(b)    Whether the misstatements and omissions alleged herein were made with scienter;

(c)    Whether the statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations and management of NHTC;

(d)    Whether Defendants acted knowingly or recklessly in issuing allegedly false and misleading financial statements;

(e)    Whether the prices of NHTC securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f)    To what extent the Settlement Class Members have sustained damages, if any, and the proper measure of damages.

Accordingly, Rule 23(a)(2) is satisfied.

### C.      Plaintiffs' Claims Are Typical of Those of the Settlement Class

A plaintiff's claims will be deemed typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *see also Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996) (finding that typicality was met even though defendant claimed that the vast majority of shares were purchased by institutional investors rather than small investors and that plaintiff relied on oral representations of his broker).  The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical.  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).

Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members.  Defendants' alleged course of conduct described in the Consolidated Complaint uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the decline in market value following the alleged corrective disclosures.  Plaintiffs' claims are typical of the other Settlement Class Members because, like all other Settlement Class Members, they lost money when it was reported that NHTC was being investigated for allegedly engaging in multi-level marketing in China in possible violation of Chinese laws  Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.      Plaintiffs are Adequate Representatives of the Settlement Class

The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594 (1997).  The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiff and his counsel with other class members; and (2) that counsel

15

1  chosen by the representative party is qualified, experienced and able with the

2  named plaintiff to vigorously conduct the litigation.  *See Hanlon,* 150 F.3d at

3  1020.

4      There are no apparent conflicts of interest between Plaintiffs and the

5  absent Settlement Class Members.    Indeed, Plaintiffs have vigorously

6  prosecuted this action from the outset and have reached a resolution that is in the

7  best interests of the Settlement Class.  Plaintiffs have shown that they are more

8  than adequate representatives.  Moreover, the Court previously determined that

9  Co-Lead Counsel, Levi & Korsinsky, LLP, and The Rosen Law Firm, P.A., are

10 qualified to represent the Settlement Class.  And as set out in their firm resumes,

11 both Co-Lead Counsel have extensive experience prosecuting securities class

12 actions.  (*See* Declaration of Adam Apton, filed herewith, Exs. 1 and 2.)

13     **E.    The Requirements Of Rule 23(b)(3) Are Also Satisfied**

14     Rule 23(b)(3) authorizes class certification where, in addition to the

15 requirements of Rule 23(a), common questions of law *or* fact predominate over

16 any individual questions and a class action is superior to other available means

17 of adjudication.  *See Amchem,* 521 U.S. at 607.  This case easily meets Rule

18 23(b)(3)'s requirements.

19     **1.    Common Legal and Factual Questions Predominate**

20     "Predominance is a test readily met in certain cases alleging . . . securities

21 fraud . . . ."  *Amchem,* 521 U.S. at 625.  In this securities fraud case, Defendants'

22 alleged liability arises from their conduct with respect to NHTC's business

23 practices in China.  Whether Defendants' publicly disseminated releases and

24 statements during the Settlement Class Period omitted and/or misrepresented

25 material facts about those business practices is the central issue in this case and

26 predominates over any individual issue that theoretically might arise.  *See*

27 *Hanlon*, 150 F.3d at 1022 (stating that Rule 23(b)(3) is satisfied where "[a]

28

common nucleus of facts and potential legal remedies dominates [the] litigation").  Thus, the predominance requirement is satisfied here.

### 2. A Class Action Is the Superior Means To Adjudicate Lead Plaintiffs' and Settlement Class Members' Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the proposed Settlement itself.  As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial."  521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).  Thus, any manageability problems that may have existed here—and Lead Plaintiffs know of none—are eliminated by the Settlement.  In any event, given the alternatives, *e.g.*, unnecessarily burdening the judiciary with numerous actions involving relatively small amounts of damages, which "would prove uneconomic for potential plaintiffs" where "litigation costs would dwarf potential recovery," resolving this case on a class-wide basis is clearly preferable.  *Hanlon*, 150 F.3d at 1023.

## VI. THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the Settling Parties may be heard with respect to final approval.  *See Manual for Complex Litigation*, Third, §23.14 (West ed. 1995).  Here, the Settling Parties propose that notice be given principally by U.S. mail.  (*See* Stipulation ¶ 7.2(a).)  In addition, the Stipulation provides for publication of a summary notice, which will be published on www.strategicclaims.net and in the national edition of *Investor's Business Daily*. (*See id*.)

17

The proposed form of mailed notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Settlement Class Members in a fair, concise and neutral way:  (1) the existence of and their rights with respect to the Action, including instructions on how persons can exclude themselves from the Settlement Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement, including instructions on how to submit a Proof of Claim, object to the Settlement, and request to appear at the Final Approval Hearing.  The proposed form of summary notice (Exhibit A-3 to the Stipulation), provides essential information about the Action and the Settlement, including an address for potential class members to write in order to obtain the full long form of mailed notice.

The means and forms of notice proposed here constitute valid and sufficient notice to the Settlement Class, the best notice practicable under the circumstances, and comply fully with the requirements of Rule 23 and due process.  *See e.g. In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989) (stating that "notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (internal citation omitted); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *In re Equity Funding Corp. of Am Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (directing that class notice must "present a fair recital of the subject matter and proposed terms" and provide "an opportunity to be heard to all class members") (internal citation omitted); *see also Manual Third* § 30.41 (approving use of combined class notice and settlement notice where appropriate).

## VII.   __PROPOSED SCHEDULE__

Plaintiffs respectfully request the Court schedule the dates required by, and set forth in the [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class, which Lead Counsel will present to the Court.   Specifically, Plaintiffs request the Court schedule the following dates:

| Event | Deadline for Compliance |
| --- | --- |
| Last day to complete mailing of Notice and Proof of Claim Form | No later than eighteen (18) calendar days after entry of Preliminary Approval Order. |
| Last day to publish Summary Notice | No later than seven (7) calendar days after the entry of the Preliminary Approval Order. |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. | No later than thirty-five (35) calendar days prior to the Final Approval Hearing. |
| Last day for Settlement Class Members to submit comments in support of or in opposition to the proposed Settlement, and the applications for Fee and Expense Awards. | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Last day for potential Settlement Class Members to request exclusion from the Settlement Class. | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards. | No later than seven (7) calendar days prior to the Final Approval Hearing. |
| Final Approval Hearing | |

19

## VIII.   CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies.   Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to Class.

DATED: October 3, 2017            **LEVI & KORSINSKY LLP**


By: /s/ Adam C. McCall
**LEVI & KORSINSKY LLP**
Adam C. McCall (302130)
**Email**: amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles CA 90071
Tel: (213) 985-7290
Fax: (202) 333-2121


**LEVI & KORSINSKY LLP**
Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
**Email:** nporritt@zlk.com
**Email:** aapton@zlk.com


**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:  (213) 785-2610
Facsimile:  (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs*