LEVI & KORSINSKY, LLP
Adam M. Apton
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 985-7290
Email:  aapton@zlk.com

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

|  |  |
|---|---|
| ROBERT FORD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>NATURAL HEALTH TRENDS CORP., CHRIS T. SHARNG, and TIMOTHY S. DAVIDSON,<br><br>Defendants. | Case No. 2:16-cv-00255-TJH-AFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF THE SETTLEMENT, AND APPROVAL OF THE MODIFIED PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:   April 2, 2018**<br>**Time:  10:00 a.m.**<br>**Room:  Courtroom 9B**<br>**Judge:  Hon. Terry J. Hatter, Jr.** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on April 2, 2018 at 10:00 a.m., or as soon thereafter as counsel may be heard, pursuant to an Order of the Court issued on November 16, 2017 ("Preliminary Approval Order"), at the United States District Court, Central District of California, United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, California 90012 - Courtroom 9B, before the Honorable Terry J. Hatter, Jr., Lead Plaintiffs Wang Juan and Manh Dao and Named Plaintiffs Abolghassem Tehrani and Tony A. Tran (collectively, "Plaintiffs") (on behalf of themselves and all Settlement Class Members) will move pursuant to Fed. R. Civ. P. 23(e), for an order certifying the Class, as defined herein, for settlement purposes only, granting final approval of the proposed settlement (the "Settlement"), and approval of the proposed modified plan of allocation of the proceeds of the Settlement (the "Plan of Allocation") between Plaintiffs and Defendants Natural Health Trends Corp. ("NHTC"), Chris T. Sharng, Timothy S. Davidson and George K. Broady (collectively, "Defendants").

This Motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Joint Declaration of Co-Lead Counsel, dated February 26, 2018; the Declaration of Adam M. Apton, dated February 26, 2018 (the "Apton Declaration") and the exhibits filed therewith; the Declaration of Laurence M. Rosen, dated February 26, 2018 (the "Rosen Declaration") and the exhibits filed therewith; the Affidavit of Josephine Bravata, dated February 26, 2018 (the "SCS Aff."), and the exhibits filed therewith; the Stipulation and the exhibits filed therewith [ECF No. 90]; and all other pleadings and papers filed in this action, including a proposed order granting final approval.

1

## **TABLE OF CONTENTS**

2 NOTICE OF MOTION AND MOTION .................................................................i

3 TABLE OF AUTHORITIES ...........................................................................iii

4 MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

5 PRELIMINARY STATEMENT ......................................................................1

6 STATEMENT OF FACTS ...............................................................................2

7       I.Procedural History...................................................................................2

8     II.    Plaintiffs' Claims......................................................................3

9     III.   The Settlement's Terms ..........................................................5

10 ARGUMENT ......................................................................................................6

11       I.STANDARDS FOR APPROVAL OF CLASS ACTION
12           SETTLEMENTS ....................................................................6

13     II.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD
               FOR APPROVAL ..................................................................8

14           A.    The extent of discovery completed and the stage of the
15                   proceedings support approval ........................................8

16           B.    The strength of the case and the risk, expense, complexity, and
                 likely duration of further litigation support approval ...............9

17           C.    The risk of maintaining class action status throughout the trial
18                  supports approval ........................................................11

19           D.    The risk of uncollectability supports approval .............12

20           E.    The Settlement Amount Supports Approval of the Settlement ....12

21           F.    The Recommendation of Experienced Counsel Heavily Favors
                 Approval of the Settlement .........................................13

22           G.    The Reaction of the Class Supports Approval of the
23                  Settlement..................................................................15

24     III.   THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND
              SHOULD BE APPROVED BY THE COURT .......................15

25     IV.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED.
26             R. CIV. P. 23 IS APPROPRIATE........................................17

27           A.    The Class is Sufficiently Numerous .............................17

28

B.     Common Questions of Law or Fact Exist.....................................17

C.     Plaintiffs are Adequate Representatives of the Class ..................18

D.     The Requirements of Rule 23(b)(3) are Also Satisfied ...............19

V.     THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS...........................................................................................20

CONCLUSION ...............................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................18, 19, 20

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979)......................................................8

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989).................................................11, 12

*Carson v. Am. Brands*, 450 U.S. 79 (1981) .........................................7

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .............................................................15

*DeJulius v. New England Health Care Employees Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) .............................................................20

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..............................................................................20

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...............................................................18

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)................................................................................7

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) .............................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................6, 17, 19

*Hicks v. Morgan Stanley & Co.*,
  No. 01-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ..............13

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................14

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973) .............................................................9

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ...............................................................21

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) ......................................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..............................................................................21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).....................................8, 9, 12, 15

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...................................................................8

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................7, 8, 10, 11

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................7, 15

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ...........14

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ............................................................15

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................9

*Riker v. Gibbons*,
    No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ...............14

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................................17

*Rodriguez v. W. Publ'g*,
    563 F.3d 948 (9th Cir. 2009) ............................................................7

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) ............................................................16

*In re Skilled Healthcare Group, Inc.*,
    No. 09-5416, 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011) ...........15, 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................7

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ............................................................13

*In re THQ Inc. Sec. Litig.*,
    No. 00-1783, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ...........17, 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................11

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ............................................................13

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
    122 F.R.D. 251 (C.D. Cal. 1988) ............................................................19

**Statutes**

Fed. R. Civ. P. 23(a)(1) ............................................................17

Fed. R. Civ. P. 23(a)(2) ............................................................17

Fed. R. Civ. P. 23(b)(3)(D) ............................................................20

Fed. R. Civ. P. 23(e) ............................................................passim

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs and Co-Lead Counsel are pleased to present, for the Court's final approval, a $1.75 million cash settlement resolving all claims in this Action against all Defendants, as set forth in the Stipulation preliminarily approved by this Court on November 16, 2017.[1] The $1.75 million Settlement is fair, reasonable, and adequate, and a strong result in light of the difficulties Plaintiffs would have faced had they continued to litigate this Action.

The Settlement is an excellent recovery in a difficult securities class action. As further set out below, the challenges to proving liability, though not insurmountable, are significant. That is true of most securities class actions, but there end the similarities. In most securities class actions, class certification is, if not assured, then at least probable. Here, though, based on the expert statistical analysis conducted by several experts Plaintiffs retained, there was substantial doubt that Plaintiffs could make the showing necessary to entitle them to class treatment. Likewise, in most securities class actions, documents are produced in English, while third-party discovery is available and plentiful. Here, though, a substantial proportion of documents would be in Chinese, and have to be translated at great expense, while third party discovery, which would take place in China, is essentially unavailable due to Chinese law and policy.

Yet despite these difficulties, the Settlement Amount of $1.75 million represents over 5.8% of the total maximum estimated damages the Class could have recovered as calculated by Plaintiffs' experts – which is in line with the median settlement of cases of this size, which did not face such difficulties.

---

[1] All terms have the same meaning as those set forth in the Stipulation of Settlement unless specified otherwise.

To date, over 22,500 Notices have been sent to potential Settlement Class Members notifying them of the potential Settlement. Neither Co-Lead Counsel nor the Claims Administrator has received any objections or requests of exclusion. In light of the positive result that the Settlement provides as well as the response from the Settlement Class to date, Plaintiffs respectfully submit that the Settlement should be approved and Plaintiffs' motion should be granted in its entirety.

## **STATEMENT OF FACTS**

### I.   Procedural History

This is one of two actions that were filed shortly after a revelation that NHTC was under investigation for violating China's multi-level marketing laws. Lead Plaintiffs timely moved for appointment pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), and were appointed by the Court. [ECF No. 26].

Prior to filing their Consolidated Class Action Complaint on April 29, 2016 (the "Complaint") [ECF No. 32], Plaintiffs conducted an extensive investigation and analysis of the factual and legal issues involved in this Litigation both before and after the filing of the Complaint. As part of their investigation, Plaintiffs: (a) reviewed and analyzed all of the filings NHTC made with the Securities and Exchange Commission ("SEC") during several years; (b) reviewed and analyzed public statements made by and about Defendants and NHTC, including conference calls, press releases, analyst short-seller reports, and news revealing information about NHTC; (c) spoke with more than 30 persons with knowledge, including former employees of NHTC located in the U.S. and China and current or former NHTC Members; (d) reviewed and analyzed Chinese-language information readily obtainable on the Internet; (e) reviewed and analyzed, and consulted with an expert on, Chinese law on multi-level marketing; and (f) analyzed certain factors used in determining whether a security trades on an efficient market, entitling it to class treatment. Plaintiffs' investigator also joined NHTC Hong Kong from China, obtaining the internal literature NHTC used to train new China-based

2

Members.

Defendants timely moved to dismiss the Complaint, and Plaintiffs timely opposed. The Motion to Dismiss also spawned a collateral motion to strike certain documents submitted by Defendants. Because of Plaintiffs' extensive investigation, the Complaint survived Defendants' motion to dismiss, even under the exacting standards imposed by the PSLRA; the Court's December 2016 Order also denied judicial notice of the documents Plaintiffs sought to strike. [ECF No. 66].

This case then moved to discovery. Plaintiffs served a set of 45 Requests for Production on Defendants, and responded to a set of 39 Requests for Production and 11 interrogatories served by Defendants. Plaintiffs also searched for and provided to Co-Lead Counsel relevant documents in response to Defendants' Requests for Production.

Plaintiffs drafted their motion in support of class certification, which was due to be filed in late June 2017. In the course of drafting that Motion, Plaintiffs retained an expert to assist them in proving that NHTC's common stock traded on an efficient market, which is essential to class treatment (though not in a settlement class). Without claiming that NHTC's stock did not trade on an efficient market, the expert expressed some doubt that it did. Plaintiffs obtained a second opinion, which, while it was more favorable, was not free of doubt, either.

Both because the Parties would shortly incur significant discovery expense, and because of risks in certifying a class, the Parties began settlement discussions in earnest. The discussions quickly proved promising. The Parties accordingly sought a stay of this case before Plaintiffs' motion for class certification was due to be filed. [ECF No. 86]. During the stay, the Parties were able to negotiate a Settlement, which the Parties later documented and filed, and which the Court preliminarily approved. [ECF Nos. 88, 90, 97].

## II.   Plaintiffs' Claims

Plaintiffs allege that Defendants misrepresented and omitted material information

from the investing public about the Company's compliance with China's multilevel marketing laws. Specifically, the Complaint alleged that Defendants failed to disclose: (1) that NTHC was not engaged in multilevel marketing in China; (2) that NHTC did not comply with Chinese laws governing multilevel marketing; and (3) the substantial risk that NHTC would face severe legal and regulatory penalties in China, including that NTC's China operations representing more than 90% of its global revenue could be shut down and that NHTC could face substantial monetary penalties. See, generally, ECF No. 32. Plaintiffs further alleged that, when these risks became public, NHTC's share price fell and shareholders were damaged.

The case hinged on the interpretation of certain statements made by Defendants in NHTC's SEC filings. It is not disputed that the substantial majority of NHTC's multi-level marketing activities occurred through its Members who were themselves located in mainland China, nor that these Members were in fact members of NHTC's Hong Kong organization. There is no doubt that multi-level marketing is permitted in Hong Kong but prohibited in mainland China, and that the legality of having China-based members conduct multi-level marketing by being members of a Hong Kong organization is not definitively established, and at the very least, presents a substantial legal risk.

NHTC's Class-period SEC filings disclosed that "[m]ost of our Hong Kong revenues are derived from the sale of products that are delivered to members in China". Defendants' Motion to Dismiss, ECF No. 47, at 14. At the motion to dismiss stage, the Court agreed with Plaintiffs' argument that this language suggested at most that NHTC paid commissions to Hong Kong residents for sales they made to their friends and family living in China. Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 51, at 15. But in the course of discovery, the Parties would attempt to determine both how this statement was interpreted by investors, and how it was meant by the speakers. Should Defendants persuade the Court on summary judgment, or the jury, either that the statement was interpreted by the markets as an admission that NHTC

4

Hong Kong's Members actually were located in mainland China, or that Defendants were at most negligent in making the statement, then the Defendants would win on the merits.

### III.    The Settlement's Terms

The Settlement provides for Defendants to pay $1.75 million to resolve all claims against them brought by a class consisting of all Persons who purchased NHTC securities between March 6, 2015 and March 15, 2016, inclusive, and who were damaged thereby, including Plaintiffs.[2]

In exchange, Class Members will release "any and all claims (including Unknown Claims as defined in ¶ 1.42 hereof), duties, debts, demands, rights, disputes, suits, matters, damages, losses, obligations, proceedings, issues, judgments, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary or otherwise; restitution; rescission; interest; attorneys' fees; expert or consulting fees; and any other costs, expenses, charges, or liability whatsoever), whether based on federal, state, local, statutory, common, administrative, or foreign law or any other law, rule or regulation, or at equity, whether known or unknown, discoverable or undiscoverable, concealed or hidden, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, choate or inchoate, accrued or unaccrued, matured or unmatured, at law or in equity, whether class, derivative, or individual in nature, which

---

[2] Excluded from the Settlement Class are Defendants; members of the Defendants' immediate families; officers, directors, and subsidiaries of NHTC; any firm, entity, or corporation wholly owned by any Defendant and/or any member(s) of a Defendant's immediate family; any trust of which a Defendant is the settlor or which is for his benefit and/or that of any member of his immediate family; and the legal representatives, heirs, or successors-in-interest of NHTC and the Individual Defendants. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions provided in the Notice.

now exist or heretofore have existed or have been or could have been asserted in any forum, whether foreign or domestic, by Plaintiffs or any Settlement Class Member, or any Person claiming through or on behalf of any of them, against any of the Released Persons based upon, arising out of, or relating in any way to the claims, allegations, acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations or omissions that are, were, or could have been alleged in the Litigation. Expressly excluded from Released Claims are: (i) the matters set forth in ¶ 6.5 of this Stipulation; and (ii) the shareholder derivative claims asserted in *Zhou v. Sharng et al.* and *Kleinfeldt v. Sharng et al.*, pending in the Superior Court of the State of California, County of Los Angeles, and the United States District Court for the Central District of California, respectively." Stipulation of Settlement, at ¶1.29 [ECF No. 90]. These claims are released as to all "Released Persons", meaning Defendants and any of their "affiliates, parents, subsidiaries and divisions, and each of their or the Person's past, present or future directors, officers, employees, partners, members, principals, agents, owners, fiduciaries, shareholders, accountants, auditors, attorneys, associates, consultants, advisors, insurers, co-insurers, reinsurers, trustees, estates, beneficiaries, administrators, foundations, underwriters, banks or bankers, personal or legal representatives, predecessors, successors, assigns, joint ventures, spouses, immediate family members, heirs, executors, and any trust of which a Person is the trustee or settlor or which is for the benefit of the Person or his or her family." Stipulation of Settlement, ¶1.28.

## **ARGUMENT**

### I.    **STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS**

Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This ultimate decision is in the "sound discretion of the

6

district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

In evaluating a proposed class-action settlement, courts in the Ninth Circuit "put a good deal of stock in [class-action settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g*, 563 F.3d 948, 965 (9th Cir. 2009). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981).

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and

7

views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its judgment for that of counsel who litigated the case. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004). Rather, the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus "[t]he recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's length negotiations, and supported by the Co-Lead Counsel who aggressively litigated this case for over two years.

## II.   THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.   The extent of discovery completed and the stage of the proceedings support approval

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of their cases is one of the factors which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459.

Here, Plaintiffs' extensive legal investigation allowed them to understand Chinese law on multilevel marketing, both as it is written on the books and as it is enforced in practice. Plaintiffs' investigation allowed them to understand the facts of NHTC's Chinese multilevel marketing operations, and even to obtain some of the internal

---

[3] There is no government participant.

8

1 literature NHTC used to train Chinese employees in multilevel marketing. Plaintiffs also
2 reviewed Defendants' statements to the investing public.

3    The briefing on Defendants' motion to dismiss further sharpened the issues in this
4 case. Defendants raised, and presented their best arguments in support of, their defense
5 that they had adequately informed the public of the risk of the existence of their Chinese
6 multilevel marketing operations. Plaintiffs likewise presented their best response. And
7 finally, drafting a brief for class certification made Plaintiffs acutely aware of the risk
8 that they would not be able to show entitlement to Class treatment.

9    Plaintiffs accounted for these issues when deciding whether to accept the
10 Settlement. *See Mego Fin.*, 213 F.3d at 458.

11

12 ### B.    The strength of the case and the risk, expense, complexity, and likely duration of further litigation support approval

13

14    "In most situations, unless the settlement is clearly inadequate, its acceptance and
15 approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l*
16 *Rural.*, 221 F.R.D. at 526. Courts regularly recognize "that stockholder litigation is
17 notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528
18 (S.D.N.Y. 1973).

19    This case poses significant risks. As set out above, there was a risk that Plaintiffs
20 would not be able to prove their case on the merits. But in this difficult case, even
21 obtaining evidence would prove difficult. First, many of NHTC's relevant documents
22 would have been in Chinese. While Co-Lead Counsel employ Chinese speakers,
23 including an attorney who holds dual U.S. and Chinese law degrees, reliance on crucial
24 team members inevitably creates bottlenecks. Second, many of the crucial documents
25 and much of the crucial testimony in this case is held by NHTC Members living in
26 China.

27

28

Obtaining this evidence is likely impossible. Obtaining third-party evidence in China is extremely difficult. To obtain documentary evidence, parties must submit letters rogatory. China will only enforce such letters rogatory if they comport with Chinese rules of civil procedure. Yet China has nothing like the broad mandate of U.S. discovery.[4] It is unlikely that letters rogatory will be enforced in China unless they are hyper-specific, for example by picking out specific individual documents. And depositions are simply not permitted.[5] While it is theoretically possible that Chinese Members might be willing to travel to Los Angeles to testify against NHTC, Plaintiffs have not found any willing to do so.

Forced to show that NHTC engaged in multilevel marketing in China that violated China's specific laws but unable actually to obtain evidence from Members in China, Plaintiffs might well have summary judgment entered against them for lack of evidence even if their claims are true.

The immediacy and certainty of a recovery favors the Settlement.[6] Approval of the Settlement will mean a present recovery for eligible claimants. If not for this Settlement, there would have been additional formal discovery, class certification briefing and summary judgment. There is no guarantee that these proceedings would be

---

[4] Elizabeth Fahey and Zhirong Tao, The Pretrial Discovery Process in Civil Cases: A Comparison of Evidence Discovery Between China and the United States, 37 B.C. Int'l & Comp. L. Rev. 281, 282-286 (2014), available at <http://lawdigitalcommons.bc.edu/iclr/vol37/iss2/3/>.

[5] United States Department of State, Judicial Assistance in China, available at <https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/china.html>.

[6] *See In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.

10

1  favorable, but it is guaranteed that they would not be resolved until after a significant

2  delay.

3  Accordingly, settlement of this litigation will ensure a recovery, eliminating the

4  risk of no recovery at all. The Settlement is, therefore, in the best interest of the Class.

5  As the Ninth Circuit has made clear, the very essence of a settlement agreement is

6  compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for*

7  *Justice*, 688 F.2d at 624. Thus, that the Class potentially could have achieved a greater

8  recovery after trial does not preclude the Court from finding that the Settlement is

9  within a "range of reasonableness" that is appropriate for approval. *See, e.g., Warner*

10  *Commc'ns*, 618 F. Supp. at 745.

### C. The risk of maintaining class action status throughout the trial supports approval

14  In securities class actions, plaintiffs must avail themselves of the fraud on the

15  market presumption to establish establishing the element of reliance, thus permitting

16  class-wide treatment.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 n.6 (2011). To

17  trigger the presumption, Plaintiffs must show that NHTC's stock traded in an efficient

18  market. In determining whether a security trades on an efficient market, courts,

19  including in the Ninth Circuit, have typically followed the five factors set out in *see*

20  *Cammer v. Bloom*, 711 F. Supp. 1264, 1276 (D.N.J. 1989).

21  Several of the *Cammer* factors suggested trouble ahead. For example, one

22  *Cammer* factor is the number of analysts who cover the security. while numerous

23  analyst reports were written about NHTC, these reports were not written by human

24  analysts but automatically generated by machines. Further, while several analysts asked

25  questions during NHTC earnings calls, the case law supporting inclusion of these

26  persons under the relevant Cammer factor is sparse. Accordingly, there is a risk that the

27  Court would find that the number of analysts covering NHTC is zero.

28

*Cammer*'s fifth and most important factor is "empirical facts showing a cause and effect relationship between unexpected corporate events or financial results and an immediate response in the stock price." *Cammer*, 711 F. Supp. at 1287. As is customary, Plaintiffs retained an expert to opine on this factor. When the expert expressed reservations, Plaintiffs obtained a second opinion, which was more favorable, but still expressed doubts. With even Plaintiffs' experts expressing reservations about the showing Plaintiffs must make, the risk that Plaintiffs faced was substantial.

Thus, even if Plaintiffs prevailed on the issue of liability, significant additional risks would remain in establishing entitlement to class treatment.

### D.    The risk of uncollectability supports approval

The Complaint alleges that NHTC's mainland China operations, which account for a substantial majority of NHTC's revenue and profits, are unlawful. The Complaint alleges that these operations subject NHTC to the risk of fines or even closure of its business. If NHTC stops being able to conduct operations, has to pay out substantial fines, or has its business closed, there is a risk that it will not be able to pay out a $30 million judgment in this case. Accordingly, collectability supports approval.

### E.    The Settlement Amount Supports Approval of the Settlement

"An important consideration in judging the reasonableness of a settlement is the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement. However, in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526. Balanced against all of the risks outlined above and in the Joint Declaration, Plaintiffs have recovered a $1,750,000 cash settlement. Plaintiffs' expert estimated potential recoverable damages for the Class at approximately $30 million. The Settlement, therefore, recovers over 5.8% of the total

damages that Plaintiffs' expert estimated could have been recovered if Plaintiffs were completely successful on all issues of liability and damages in the Action. This is only slightly less than the 7.3% returned by the average settlement in cases of this size, and is well within the range of settlements that courts have approved.[7]

In addition, Plaintiffs likely would not prove all of the many elements of liability and damages, as few litigants are ever so successful. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiffs' case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Thus, the possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).[8]

### F.      The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement

Highly experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Settlement. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012); *see also Ellis*, 87 F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the

---

[7]  *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of Plaintiffs' estimated damages). *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery").

[8]  *See also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 716 (7th Cir. 2001) (affirming settlement over objection that "the settlement could have been larger" where the Plaintiffs "would have had a headache trying to get any judgment on the merits").

---

PLAINTIFFS' MOTION AND MPA ISO FOR FINAL APPROVAL
Case No. 2:16-cv-0255-TJH-AFM

settlement was reached." *Warner Commc'ns.*, 618 F. Supp. at 741. Here, the parties engaged in arm's-length negotiations before Settlement was ultimately reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

Here, Co-Lead Counsel has many years of successful experience in litigating securities class actions throughout the country – including within this Circuit and District in particular – and in assessing the respective merits of each side's case. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"). *See also* Rosen Law Firm Resume, Exh. A to the Rosen Declaration; Levi & Korsinsky Resume, Exh. A to the Apton Declaration. Co-Lead Counsel's endorsement of the Settlement as fair, reasonable and adequate to the Class favors this Court's approval of the Settlement. Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel at Cooley, LLP and King & Spalding, LLP. Defendants' counsel brought considerable experience and expertise to bear and vigorously defended this Action. "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9.

### G.     The Reaction of the Class Supports Approval of the Settlement

It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.[9] The Claims Administrator disseminated 22,582 Notice Packets to potential Class members; published the Summary Notice in the national edition of *Investor's Business Daily* and published online on *Globe Newswire*; and has been administrating a dedicated website to field NHTC shareholder questions. SCS Aff. at ¶¶ 6-7, 9. As of February 26, 2018, SCS has not received a single objection or request for exclusion. *Id.* at ¶ 12.[10] The positive reaction of the Class thus weighs in favor of settlement approval.

## III.     THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Omnivision*, 559 F. Supp. 2d at 1045. "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *38. There is no requirement that a settlement must benefit all class members equally. *See Mego*, 213 F.3d at 461.[11] These decisions acknowledge

---

[9] *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a *de minimus* objection as ratification of the settlement terms by the class."); *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528.

[10] The time period for objecting to the Settlement expires on March 12, 2018.

[11] *See also Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of

---

15

that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

The Plan of Allocation initially included in the Notice omitted a date and corresponding decline in NHTC's stock that should have been included. Along with this motion, Plaintiffs are submitting a modified Plan of Allocation that includes this date and allows for a more even distribution of the Settlement Amount to eligible Settlement Class Members. The modified Plan of Allocation, attached to the Joint Declaration of Co-Lead Counsel, now provides eligible Settlement Class Members with recoverable losses for the decline in NHTC's stock price that occurred on January 7, 2016, the day Seeking Alpha reported that a Chinese-language newspaper report revealed that NHTC was being investigated by Chinese authorities. The modification to the Plan of Allocation does not affect the Settlement Class definition, as the corrective disclosure date falls within the Class Period.

The Plan of Allocation, as modified, provides eligible Settlement Class Members with Recognized Losses that comport with the decline in NHTC's stock price. Accordingly, the Net Settlement Fund will be allocated to eligible Settlement Class Members *pro rata* based on the relative size of their claims and credits all Settlement Class Members with the best possible result they could have achieved based on the number of NHTC shares they purchased and the timing of their purchases and sales of NHTC securities. Shaping each class member's recovery around these factors is only fair. *Skilled Healthcare,* 2011 U.S. Dist. LEXIS 10139 at *12. Accordingly, the modified Plan of Allocation will equitably apportion the net Settlement proceeds among

---

[Footnote continued from previous page]

compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery).

all eligible Class members and should be approved.

## IV.  CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23 IS APPROPRIATE

Because the Settlement was reached prior to a decision by the Court regarding class certification, Defendants have agreed to certification of the Class for settlement purposes only. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). Here, certification of the Class is requested solely to effectuate the Settlement, but, as set forth below, all of the requirements of Rule 23 are easily met.

### A.  The Class is Sufficiently Numerous

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). Here, joinder is certainly impracticable. *See In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-10 (C.D. Cal. Mar. 22, 2002). While the precise number of NHTC shareholders is unknown, the Claims Administrator mailed 22,582 Notice Packets to potential Settlement Class members, brokers, and nominee holders. SCS Aff. at ¶ 6. Accordingly, there are thousands of members in the Class, which easily satisfies the numerosity requirement.

### B.  Common Questions of Law or Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class." Fed. R. Civ. P. 23(a)(2). It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1019-20. Accordingly, common questions of law and

17

fact exist in this action such that certification as a class action is appropriate. The common questions of law and fact here are overwhelming and include:

    (a)    Whether the federal securities laws were violated by Defendants' acts as alleged in the Consolidated Complaint;

    (b)    Whether the misstatements and omissions alleged herein were made with scienter;

    (c)    Whether the statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations and management of NHTC;

    (d)    Whether Defendants acted knowingly or recklessly in issuing allegedly false and misleading financial statements;

    (e)    Whether the prices of NHTC securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

    (f)    To what extent the Settlement Class Members have sustained damages, if any, and the proper measure of damages.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. Plaintiffs' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other Class members; their claims easily satisfy Rule 23(a)'s typicality requirement.

### C.    Plaintiffs are Adequate Representatives of the Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The Ninth Circuit has found representation adequate where (1)

18

counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to those of the absent class members, and (3) it is unlikely that the action is collusive." *THQ*, 2002 U.S. Dist. LEXIS 7753, at *20.

Here, there are no conflicts between Plaintiffs and absent Class members. Plaintiffs are adequate as demonstrated by the fact that they have retained experienced counsel to bring this action against Defendants. Thus, Plaintiffs have clearly shown that they are adequate as representatives for the Class. Moreover, Co-Lead Counsel are nationally recognized class action law firms, which have been appointed as lead counsel in this and numerous other securities class actions. Accordingly, both Plaintiffs and their Counsel are adequate to represent the Class.

### D.      The Requirements of Rule 23(b)(3) are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. The action easily meets Rule 23(b)(3)'s requirements. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the Plaintiffs' claims can be done through common questions of fact or law, or whether the proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022.

Courts generally find that securities fraud class actions easily satisfy the predominance requirement. *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a series of misrepresentations and market manipulations – clearly satisfies the requirement that common questions predominate over those affecting individual members.") (citing *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)). In this case, the

common questions of law and fact identified above predominate because the proof for the claims of misrepresentation, materiality, reliance and Defendants' scienter are all based on a common nucleus of fact and common course of conduct.

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here – and Plaintiffs know of none – are eliminated by the Settlement. Accordingly, it is appropriate to certify this litigation as a class action.

## V.   THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedure sought to reach the greatest number of Class members possible. The Claims Administrator disseminated 22,582 Notice Packets to potential Class members and nominees. SCS Aff. at ¶ 10. The Claims Administrator published the Summary Notice in the national edition of *Investor's Business Daily Investor's Business Daily* and published online on *Globe Newswire* on January 22, 2018 and, since January 18, 2018, has maintained a website to field NHTC shareholder questions. *Id*. at ¶¶ 7, 9 and Ex. C. As of February 26, 2018, no objections or requests for exclusion have been received. *Id*. at ¶ 12. This notice program was clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) (finding notice program akin to the instant one

20

satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Here, the Notice (*see* SCS Aff. Ex. A) detailed the Settlement and the releases that would be exchanged; summarized the history of the Litigation; contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. Accordingly, the Notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

## **CONCLUSION**

For the reasons set forth above and in the accompanying declarations, Plaintiffs and Co-Lead Counsel submit that: the Settlement is fair, reasonable and adequate and should be approved by the Court; the Plan of Allocation is fair and equitable and should be approved; and the Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

DATED: February 26, 2018          LEVI & KORSINSKY, LLP

By: /s/ Adam M. Apton
Adam M. Apton (316506)
Email*: aapton@zlk.com*
445 South Figueroa Street, 31st Floor
Los Angeles CA 90071
Tel: (213) 985-7290

21

Fax: (202) 333-2121

Nicholas I. Porritt (admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email**:** nporritt@zlk.com

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:  (213) 785-2610
Facsimile:  (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

1
2

## CERTIFICATE OF SERVICE

3      I hereby certify that on February 26, 2018, I electronically filed the foregoing

4  with the Clerk of the Court using the CM/ECF system which will send notification of

5  such filing to the e-mail addresses denoted on the Electronic Mail notice list. I certify

6  under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8                                      _/s/ Adam M. Apton_
                                       Adam M. Apton
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28