LEVI & KORSINSKY, LLP
Adam M. Apton
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 985-7290
Email: aapton@zlk.com

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for Class*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROBERT FORD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> NATURAL HEALTH TRENDS CORP., CHRIS T. SHARNG, and TIMOTHY S. DAVIDSON, <br><br> Defendants. | Case No. 2:16-cv-00255-TJH-AFM <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date: April 2, 2018** <br> **Time: 10:00 a.m.** <br> **Room: Courtroom 9B** <br> **Judge: Hon. Terry J. Hatter, Jr.** |

# NOTICE OF MOTION

### TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to this Court's November 16, 2017 Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class (ECF No. 97), Lead Plaintiffs Wang Juan and Manh Dao and Named Plaintiffs Abolghassem Tehrani and Tony A. Tran (collectively, "Plaintiffs"), by their counsel, hereby move this Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) for an order awarding attorneys' fees, reimbursement of litigation expenses, and incentive awards. The Motion is set for the Final Approval Hearing at 10:00 a.m. on April 2, 2018, in the courtroom of the Honorable Terry J. Hatter, Jr., United States District Court, Central District of California, United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, California 90012 - Courtroom 9B.

This Motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Joint Declaration of Co-Lead Counsel, dated February 26, 2018; the Declaration of Adam M. Apton, dated February 26, 2018 (the "Apton Declaration") and the exhibits filed therewith; the Declaration of Laurence M. Rosen, dated February 26, 2018 (the "Rosen Declaration") and the exhibits filed therewith; the Affidavit of Josephine Bravata, dated February 26, 2018 (the "SCS Aff."), and the exhibits filed therewith; the Stipulation and the exhibits filed therewith [ECF No. 90]; and all other pleadings and papers filed in this action, including a proposed order granting final approval.

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ............................................................................. i

TABLE OF AUTHORITIES..................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.  INTRODUCTION................................................................. 1

II.  STATEMENT OF FACTS ................................................... 2

III.  REQUEST FOR ATTORNEYS' FEES ................................. 2

    A.  Standard for Approval of Attorneys' Fees in the Ninth Circuit ...... 2

    B.  All Relevant Factors Considered, An Award of 25% of the Settlement Fund is Reasonable ......................................... 4

        1.  Lead Counsel Achieved an Excellent Result for the Settlement Class.................................................... 4

        2.  Awards in Similar Cases ....................................... 5

        3.  The Risks of Litigation ......................................... 6

        4.  The Skill Required and the Quality and Efficiency of the Work ..................................................... 7

        5.  The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel ........................ 9

        6.  The Reaction of the Settlement Class Supports the Requested Award ............................................ 9

        7.  A Lodestar Cross-Check Shows the Fee Request Is Reasonable ...................................................... 11

IV.  CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE ............ 11

V.  REQUEST FOR INCENTIVE AWARDS FOR LEAD PLAINTIFFS .. 13

VI.  CONCLUSION .............................................................. 15

PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
Case No. 2:16-cv-00255-TJH-AFM

# TABLE OF AUTHORITIES

**Cases**

*In re Activision Sec. Litig.*,

   723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................5

*Aichele v. City of L.A.*,

   No. CV 12-10863-DMG (FFMx), 2015 WL 5286028 (C.D. Cal. Sep. 9, 2015)

   ........................................................................................................5

*In re Amgen Inc. Sec. Litig.*,

   No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)

   ......................................................................................................11

*Behrens v. Wometco Enters., Inc.*,

   118 F.R.D. 534 (S.D. Fla. 1988) ......................................................7

*Blum v. Stenson*,

   465 U.S. 886 (1984) ........................................................................6

*In re BP p.l.c. Sec. Litig.*,

   852 F. Supp. 2d 767 (S.D. Tex. 2012) ............................................4

*Destefano v. Zynga, Inc.*,

   No. 12 Civ. 4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016).....................11

*Detroit v. Grinnell Corp.*,

   495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res.,*

   *Inc.*, 209 F.3d 43 (2d Cir. 2000).......................................................6

*Equ In re Equity Funding Corp. of Am. Sec. Litig.*,

   438 F. Supp. 1303 (C.D. Cal. 1977) ................................................8

*Fischel v. Equitable Life Assurance Soc'y of United States*,

   307 F.3d 997 (9th Cir. 2002)..........................................................10

*Francisco v. Abengoa, S.A.*,

No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24,

2016)..................................................................................................................8

*Harris v. Marhoefer*,

24 F.3d 16 (9th Cir. 1994)................................................................................11

*Harris v. Vector Mktg. Corp.*,

No. C-08-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ...........................14

*Haynes v. MagnaChip Semiconductor Corp.*,

No. 14 Civ. 1160, 2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016)

.........................................................................................................................14

*Hensley v. Eckerhart*,

461 U.S. 424 (1983) ...........................................................................................4

*In re Heritage Bond Litig.*,

No. 02 MDL 1475, 2005 WL 1594403 (June 10, 2005) ...................................4

*Immune Response Sec. Litig.*,

497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................................................9

*Kirchoff v. Flynn*,

786 F.2d 320 (7th Cir. 1986).............................................................................6

*Knight v. Red Door Salons, Inc.*,

No. 08 Civ. 1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).........................7

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,

540 F.2d 102 (3 C 76) .......................................................................................6

*In re M.D.C. Holdings Sec. Litig.*,

No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ..............6

*Missouri v. Jenkins*,

491 U.S. 274 (1989) ...........................................................................................3

PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
Case No. 2:16-cv-00255-TJH-AFM

*In re Ocean Power Techs., Inc.*,

   No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016) ...8

*In re Omnivision Techs.*,

   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................................5

*Ontiveros v. Zamora*,

   303 F.R.D. 356 (E.D. Cal. 2014) ....................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..............................................................5

*Rite In re Rite Aid Corp. Sec. Litig.*,

   396 F.3d 294 (3d Cir. 2005)...............................................................................9

*Rodriguez v. West Publishing Corp.*,

   563 F.3d 948 (9th Cir. 2009) ...........................................................................13

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,

   904 F.2d 1301 (9th Cir. 1990)............................................................................3

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ...........................................................................14

*Vinh Nguyen v. Radient Pharm. Corp.*,

   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)........8

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002)...............................................................passim

*In re Wash. Pub Power Supply Sys. Sec. Litig.*,

   19 F.3d 1291 (9th Cir. 1994)..............................................................................2

*Yedlowski v. Roka Bioscience, Inc.*,

   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........5

**Statutes**

15 U.S.C. §78u-4 ....................................................................................................3

PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
Case No. 2:16-cv-00255-TJH-AFM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Lead Plaintiffs Wang Juan and Manh Dao and Named Plaintiffs Abolghassem Tehrani and Tony A. Tran (collectively, "Plaintiffs") and Co-Lead Counsel, Levi & Korsinsky, LLP and The Rosen Law Firm, P.A. ("Co-Lead Counsel") respectfully submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of litigation expenses, and incentive awards.

The proposed Settlement provides for a payment of $1.75 million to resolve this securities class action. Co-Lead Counsel seeks a fee award of the Ninth Circuit benchmark of 25% of the Settlement, or $437,500, and reimbursement of $35,000 in expenses.

This case was complex. The underlying issue in this case was whether NHTC complied with the law, and Co-Lead Counsel was thus required to master not just the securities laws, but also the underlying laws that Defendants allegedly violated. But the law at issue was not familiar to Co-Lead Counsel, unlike in other cases in which companies are sued for falsely stating that they complied with the law. Instead, the underlying substantive law was from a different legal system (China's) and concerned a subject matter (multi-level marketing) that, to put it mildly, intersect infrequently with the U.S. securities laws. To prosecute this case effectively, Co-Lead Counsel thus needed to develop expertise in these laws, hard-earned expertise that they are unlikely ever to be able to put to use again.

And this case was risky. That the case survived Defendants' motion to dismiss shows it was meritorious, and thus deserving of prosecution. But setting aside the challenges to pleading and proving the case on the merits, it was apparent from the very beginning that certifying a class in this case would be a

challenge. Counsel who bring challenging cases deserve to be rewarded when they obtain relief for class members with claims that are difficult to prosecute, or they will stop bringing such risky claims.

In order to achieve the Settlement of this complex and risky case, Co-Lead Counsel expended over 650 hours with a value of $401,037.50. This time and accompanying litigation expenses Co-Lead Counsel incurred were without any guarantee that they would ever be repaid. Co-Lead Counsel's request for $437,500 leaves them with a modest multiplier of less than 1.1 on the value of their time.

In addition to an award of attorneys' fees and reimbursement of litigation expenses, Co-Lead Counsel seeks incentive awards in the amount of $3,000 for each Plaintiff. Plaintiffs volunteered to serve in representative capacities during the Litigation. They actively followed the case, and provided documents to and answered questions from Co-Lead Counsel. They deserve a nominal additional award as a reward for their willingness to actively participate in the Litigation.

## II.   STATEMENT OF FACTS

The relevant facts supporting the motion are set forth in detail in the memorandum of law submitted in support of Plaintiffs' Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and Approval of the Plan of Allocation (the "Final Approval Brief") and the Joint Declaration of Co-Lead Counsel dated February 26, 2018 ("Joint Decl."), both filed concurrently herewith.

## III.   REQUEST FOR ATTORNEYS' FEES

### A.   Standard for Approval of Attorneys' Fees in the Ninth Circuit

It is well-settled in the Ninth Circuit that district courts have the discretion to apply either the percentage-of-recovery method or the lodestar method in determining attorneys' fees in a common fund case. *In re Wash. Pub Power*

*Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*"). In recent years, the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.[1] *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"). Nevertheless, in employing the percentage-of-recovery method, courts often perform a lodestar cross-check on the reasonableness of the requested fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method to calculate attorneys' fees and application of lodestar method as cross-check). No matter which method is chosen, the fees awarded in common fund cases must be fair and reasonable under the circumstances of a particular case. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Courts in the Ninth Circuit have typically considered the following factors when reviewing a proposed fee award: 1) the results achieved; 2) awards made in similar cases; 3) the risk of litigation; 4) the skill required and the quality of the work; 5) the contingent nature of the fee and the financial burden carried by the plaintiffs; 6) the reaction of the class to the proposed fee and expense request; and 7) whether the percentage appears reasonable in light of a lodestar cross-check.

---

[1] The PSLRA has also indicated its preference for a percentage analysis when awarding attorneys' fees in securities class actions.  *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
Case No. 2:16-cv-00255-TJH-AFM

*Vizcaino*, 290 F.3d at 1048-50. As discussed below, each of these factors supports the requested award of attorneys' fees herein.

## B.   All Relevant Factors Considered, An Award of 25% of the Settlement Fund is Reasonable

### 1.   Lead Counsel Achieved an Excellent Result for the Settlement Class

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Heritage Bond Litig.*, No. 02 MDL 1475, 2005 WL 1594403, at *19 (June 10, 2005) ("The result achieved is a significant factor to be considered in making a fee award."). As further set out in the Final Approval Brief, filed concurrently herewith, this case was significantly more challenging than the typical securities class action. The difficulties include: (i) that evidence would be in Chinese or, because it is held by third parties in China, simply unavailable; and (ii) that a Class could not be certified because of technical difficulties that relate not to the substance of Defendants' misconduct but to facts suggesting that NHTC's common stock did not trade on an efficient market. Beyond the difficulties Plaintiffs had yet to surmount, Plaintiffs had already conducted a rigorous investigation in China; reviewed, analyzed, and mastered, and consulted with an expert on, Chinese multilevel marketing law; and pleaded a complaint with sufficient rigor to meet the demanding requirements of the Private Securities Litigation Reform Act (the "PSLRA"), which imposes staggering pleading burdens. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to

successful pleading.") This warrants a higher fee. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016) (taking into account pleading burdens imposed by PSLRA in awarding attorneys' fees).

Further, because a large percentage of a small settlement fund is still a smaller dollar amount, courts take into account the size of the settlement fund when making an award. *Aichele v. City of L.A.*, No. CV 12-10863-DMG (FFMx), 2015 WL 5286028, at *5 (C.D. Cal. Sep. 9, 2015). "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014).

The Settlement, while significant in light of the size of the case and the difficulties it presents, is relatively small for a securities class action. Thus, a 25% award would not present Co-Lead Counsel with a windfall as in a case where the Settlement fund was much larger. *Yedlowski*, 2016 WL 6661336, at *20.

## 2. Awards in Similar Cases

Co-Lead Counsel requests a fee of 25% of the Settlement. The Ninth Circuit has held that a fee award of 25% of the settlement fund is an appropriate starting point or benchmark for determining class action fees, though "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007); *see Vizcaino*, 290 F.3d at 1048-50.[2]

---

[2] *See also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-79 (N.D. Cal. 1989) (awarding 32.8% of the fund, and upon surveying securities cases

Further, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 903 n.20 (1984) ("In tort suits, an attorney might receive one third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Counsel's request is quite reasonable.

Accordingly, Co-Lead Counsel's fee request is consistent with fee awards granted in similar actions in the Ninth Circuit and is warranted under the facts and circumstances of this case based upon the analysis presented herein.

### 3.     The Risks of Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; City of *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Indeed, the risk of litigation is an important, if not the

---

nationwide noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%").

PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
Case No. 2:16-cv-00255-TJH-AFM

1    foremost, factor in adjusting the attorneys' benchmark percentage upward. *See*

2    *Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance").

3         This case is plainly meritorious, or it would not have survived

4    Defendants' motion to dismiss. Yet there are facts that make even strong cases

5    risky, and this case has them in spades. First, cases are not won by just any facts,

6    but by facts that can be proven with admissible evidence. Here, the admissible

7    evidence that would prove Plaintiffs' case is almost entirely held either by

8    Defendants or by third parties located in China who cannot be compelled and

9    are not willing to provide evidence without compulsion. Further, much of the

10   evidence Defendants would provide is in Chinese, creating substantial additional

11   difficulties and burdens. Second, for purely technical reasons, and as further set

12   out in the Final Approval Brief, this case had relatively poor prospects for Class

13   certification. Finally, Defendants are represented by extremely capable counsel

14   willing and able to vigorously defend their clients' positions. In sum, the

15   obstacles to recovery faced by the Class in this securities class action were

16   significant, particularly given the strict pleading requirements of the PSLRA and

17   applicable proof requirements during the later stages of the case (and on any

18   appeals).

19             **4.      The Skill Required and the Quality and Efficiency of the**

20                       **Work**

21        The "prosecution and management of a complex national class action

22   requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No.

23   08 Civ. 1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Here, the

24   quality of Co-Lead Counsel's work on this case is reflected in the substantial

25   recovery obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-

26   48 (S.D. Fla. 1988).

27
     PLAINTIFFS' MOTION AND MPA ISO FOR ATTORNEYS' FEES
28                  Case No. 2:16-cv-00255-TJH-AFM

Co-Lead Counsel have extensive and significant experience in the highly-specialized field of securities class action litigation. Co-Lead Counsel's supporting declarations include firm resumes for Levi & Korsinsky, LLP and The Rosen Law Firm, P.A. which describe each firm's background and experience in conducting securities litigation. In addition, courts have noted the quality of Co-Lead Counsel's representation.[3]

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Throughout the Litigation, Lead Counsel faced formidable opposition from the prominent law firms King & Spalding, LLP and Cooley, LLP, two firms with outstanding securities litigation practices. In the face of knowledgeable and solid opposition, Co-Lead Counsel as able to develop a case that was sufficiently strong to encourage Defendants to settle the case on favorable terms for the Settlement Class. Co-Lead Counsel's diligent efforts should be rewarded.

---

[3] *See, e.g., Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("Plaintiff's counsel took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement"); *In re CBD Energy Limited.*, 4:15-CV-01668 (GHM), Hearing Tr. at 15 (S.D. Tex. July 27, 2017) ("I want to commend the lawyers…I thought it was very well lawyered on all sides. Very well. Very well done"); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *22 (D.N.J. Nov. 15, 2016) ("Lead Counsel, Levi & Korsinsky, is highly specialized in the field of securities class action litigation . . ."); *Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *20 (S.D.N.Y. May 24, 2016) ("[Plaintiffs] have retained [Levi & Korsinsky], competent and experienced counsel with extensive experience in these types of securities class actions.").

**5.     The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel**

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for Lead Plaintiff(s), who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.*

Co-Lead Counsel have received no compensation for this Litigation, and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to counsel has always been at risk and completely contingent on the result achieved.

**6.     The Reaction of the Settlement Class Supports the Requested Award**

Courts often consider the reaction of the class when deciding whether to award the requested fee. *See, e.g., Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that a "low level of objection[s] is a rare phenomenon").

Here, the reaction of the Settlement Class to date also supports the requested fee. Pursuant to Josephine Bravata on behalf of Plaintiffs' Claims Administrator, the Claims Administrator mailed a total of 22,582 copies of the Notice and the Proof of Claim to potential Settlement Class Members and nominees informing them, *inter alia*, that: Co-Lead Counsel would request that the Court approve attorneys' fees of 25% of the Settlement; reimbursement for expenses (exclusive of administration costs) of up to $35,000 for their work litigating the case and negotiating the Settlement, plus interest on such fees and expenses (exclusive of administration costs) at the same rate as earned by the Settlement Fund; and incentive awards of $3,000 for each of the Plaintiffs for their contributions. *See* Declaration of Josephine Bravata submitted herewith. Class Members were also advised of their right to object to Co-Lead Counsel's fee and expense request. *Id.*

The Notice, Summary Notice, and Proof of Claim Form, along with other documents related to the Settlement, were also posted on a website established by the Claims Administrator (https://www.strategicclaims.net/nhtc/) for easy downloading by interested investors. *Id.* at ¶7. The Claims Administrator also published the Summary Notice once on the *Investor's Business Daily* and published online on *Globe Newswire*. *Id.* at ¶9. While the time to object to Co-Lead Counsel's fee application does not expire until March 12, 2018, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. Pursuant to the Order, Co-Lead Counsel will address any timely objections received in their reply papers to be filed with the Court on March 13, 2018.

### 7.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). Moreover, "the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Co-Lead Counsel's lodestar of $401,037.50 in billable time, which resulted in the requested fee representing a multiplier of less than 1.1 times lodestar, supports the fee request. The hourly rates charged by Co-Lead Counsel range from $635 to $925 for partners and $425 to $725 for associates, with a blended hourly rate of $613, which is consistent with hourly rates approved in similar cases. *E.g. In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving rates of $750-$985 for partners and $300-$725 for associates).

## IV.    CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE

The Court should also approve Plaintiffs' requested payment of Co-Lead Counsel's expenses. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation marks and citations omitted). "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses

– including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, No. 12 Civ. 4007, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services)).

To prosecute this action to Settlement, Co-Lead Counsel has incurred reasonable and necessary costs and expenses in the amount of $42,503.20 to date, which exceeds the $35,000 that was stated in the Notice and for which Co-Lead Counsel seek reimbursement. These expenses were incurred largely in conjunction with the engagement of a damages consultant, mediator, travel, computerized legal research and data searches (*e.g.,* Pacer, Westlaw and Lexis).

The larger items include Crowninshield Financial Research, which charged fees of $2,400, and which provided a damages and loss causation analysis which was required for Plaintiffs to evaluate the potential damages recoverable and was necessary in order to prepare negotiate the settlement. Crowninshield also provided an initial evaluation of market efficiency.

In anticipation of moving for class certification, Centerpoint Analytics was retained to opine on market efficiency which would be necessary for Plaintiffs to establish reliance. Even though the motion for class certification was not filed, Plaintiffs were required to prepare the motion because it was due to be filed at about the same time that the settlement was reached. Centerpoint's total fees were $20,410.

It was necessary and beneficial for the Class to retain each of the two

investigative firms, On Point Investigations and Grapevine Asia Partners Limited, to conduct a thorough investigation and obtain evidence of falsity and scienter for inclusion in the Consolidated Class Action Amended Complaint for Violations of the Federal Securities Laws. On Point Investigations was retained to help assist in the investigation within the United States. Grapevine Asia Partners Limited is located in China and was able to assist in the investigation in China by gathering information that would otherwise have been difficult, if not impossible, to collect from the United States. Grapevine's total fees were $7,350, while On Point's total fees were $1,783.45.

Allbright Law Offices was retained as legal experts with specialized knowledge on multilevel marketing practices in China. Because the securities claims were premised on Defendants having violated multi-level marketing laws in China, these legal experts on Chinese were necessary for Plaintiffs to prove Defendants had violated China's multi-level marketing laws. Allbright's total fees were $3,510.

Co-Lead Counsel therefore seeks payment of these costs and expenses, up to $35,000, related to the prosecution of this Litigation on behalf of the Class. Additionally, because the expenses at issue are the types reimbursed by individual clients in the marketplace, they should be paid from the common fund.

Because the expenses were incurred with no guarantee of recovery, Co-Lead Counsel had a strong incentive to keep them as low as reasonably possible. The fact that no Class Members objected to the payment of Co-Lead Counsel's estimated expenses further evidences that the request of $35,000 is reasonable.

## V.      REQUEST FOR INCENTIVE AWARDS FOR LEAD PLAINTIFFS

Co-Lead Counsel requests a $3,000 incentive award for each of the

13

Plaintiffs Wang Juan, Manh Dao, Abolghassem Tehrani, and Tony A Tran. Co-Lead Counsel respectfully seeks approval for the payment of the incentive awards to the four Plaintiffs for a total of $12,000. If approved, the awards will be paid from the Settlement Fund.

In this Circuit, incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009) (internal citation omitted). Courts evaluate incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Haynes v. MagnaChip Semiconductor Corp.*, No. 14 Civ. 1160, 2016 U.S. Dist. LEXIS 162120, at *30 (N.D. Cal. Nov. 21, 2016); (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations and alterations omitted)).

"In this Circuit, an award of $5,000 is presumptively reasonable." *Haynes*, 2016 U.S. Dist. LEXIS 162120, at *30; *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted). Additionally, the requested incentive award in the aggregate represents 0.007% of the Settlement Fund.

Here, the request for $3,000 for each Plaintiff is reasonable because all Plaintiffs diligently and completely fulfilled their obligations by: (1) reviewing the initial complaint and the amended complaint; (2); reviewing additional

14

filings throughout the litigation; (3) and consulting with Co-Lead Counsel on key decisions including mediation and settlement. Further, there have been no objections to the proposed incentive awards.

In light of Plaintiffs' service to the class, Co-Lead Counsel respectfully submit that a service award of $3,000 each is reasonable.

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 25%, or $437,500, of the Settlement Fund, plus interest at the same rate and for the same time periods as earned by the Settlement Fund; (ii) reimbursement of $35,000 in expenses incurred while prosecuting this Litigation, plus interest at the same rate and for the same time periods as earned by the Settlement Fund; and (iii) incentive awards of $3,000 each for the four Plaintiffs for a total of $12,000.

DATED: February 26, 2018        LEVI & KORSINSKY, LLP

By: /s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Email: *aapton@zlk.com*
445 South Figueroa Street, 31st Floor
Los Angeles CA 90071
Tel: (213) 985-7290
Fax: (202) 333-2121

Nicholas I. Porritt (admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: nporritt@zlk.com

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)

355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:  (213) 785-2610
Facsimile:  (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_ /s/ Adam M. Apton_
Adam M. Apton